**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF TEXAS**
**DEL RIO DIVISION**

GERARDO SERRANO, on behalf of himself
and all others similarly situated,

    *Plaintiff*,

v.

U.S. CUSTOMS AND BORDER
PROTECTION;

UNITED STATES OF AMERICA;

KEVIN McALEENAN, Acting Commissioner,
U.S. Customs and Border Protection, sued in
his official capacity;

JUAN ESPINOZA, Fines, Penalties, and
Forfeiture Paralegal Specialist, sued in his
individual capacity;

JOHN DOE 1-X, Unknown U.S. Customs and
Border Protection agents, sued in their
individual capacities;

    *Defendants*.

Civil Action No. 2:17-cv-48

---

**COMPLAINT FOR RETURN OF PROPERTY, COMPENSATORY DAMAGES,**
**AND CLASS-WIDE INJUNCTIVE AND DECLARATORY RELIEF**

**Introduction**

1.       Agents for U.S. Customs and Border Protection ("CBP") seized a man's truck on September 21, 2015, at the U.S.-Mexico border station in Eagle Pass, Texas, because they found a magazine with five low-caliber bullets (but no gun) in the vehicle. Twenty-three months later, the agency still holds the truck, ostensibly for civil forfeiture, but has yet to bring the case before a judge. Repeated requests for a hearing—or even for information—have met

stonewalling and delay. This Complaint demands the immediate return of the truck, and it also seeks systematic relief to redress similar abuses in other cases.

2.      The prolonged seizure of Plaintiff's truck, without judicial process, violates the Fourth and Fifth Amendments to the U.S. Constitution. In *Brewster v. Beck*, 859 F.3d 1194 (9th Cir. 2017) (Kozinski, J.), the Ninth Circuit held that prolonged seizure of property without judicial process violates the Fourth Amendment's prohibition against unreasonable seizures. In *United States v. $23,407.69 in U.S. Currency*, 715 F.2d 162 (5th Cir. 1983), the Fifth Circuit held that substantial delay in initiating forfeiture proceedings violates the Fifth Amendment's Due Process Clause. And in *Krimstock v. Kelly*, 306 F.3d 40 (2d Cir. 2002) (Sotomayor, J.), the Second Circuit held that due process requires a prompt post-seizure hearing after the government seizes vehicles for civil forfeiture.

3.      To vindicate those constitutional rights, this Complaint raises several individual claims and one class claim. First, Plaintiff seeks the return of his property. Second, to ensure that Plaintiff is at least partly compensated for his loss, Plaintiff seeks a modest award of actual compensatory damages under *Bivens v. Six Unknown Named Agents*, 403 U.S. 388 (1971). Finally, to address similar abuses in other cases, Plaintiff seeks class-wide injunctive and declaratory relief under Federal Rule of Civil Procedure 23(b)(2) directing CBP to provide prompt post-seizure hearings after seizing vehicles from similarly-situated property owners.

4.      This case is part of a systematic policy or practice. Federal statutes do not provide for a prompt post-seizure hearing when property is seized for civil forfeiture by CBP, and CBP regularly fails to provide any kind of prompt post-seizure hearing. Plaintiff has filed this suit to recover his property and to put that policy or practice to an end.

## Jurisdiction

5.      This Court has jurisdiction over this action under 28 U.S.C. § 1331, as Plaintiff's claims arise under federal law.

6.      Plaintiff brings his individual claim for return of seized property under Federal Rule of Criminal Procedure 41(g). Plaintiff is entitled to the immediate return of his property because it is currently being held in violation of the Fourth Amendment and because— following the unlawfully prolonged seizure—any attempt by the government to institute forfeiture proceedings at this point would violate due process under *United States v. $23,407.69 in U.S. Currency*, 715 F.2d 162 (5th Cir. 1983).

7.      Plaintiff brings his individual Fourth and Fifth Amendment claims for compensatory damages under *Bivens v. Six Unknown Named Agents,* 403 U.S. 388, 397 (1971). Plaintiff seeks a modest award of damages for acts in violation of his clearly-established Fourth Amendment right against unreasonable seizures, as well as his clearly-established Fifth Amendment right to a post-seizure hearing.

8.      Plaintiff brings his class-action Fifth Amendment claim under the Administrative Procedure Act, 5 U.S.C. § 702, and the Declaratory Judgments Act, 28 U.S.C. §§ 2201, 2202, as well as "directly under the constitution," *Porter v. Califano*, 592 F.2d 770, 781 (5th Cir. 1979). Plaintiff seeks injunctive and declaratory relief against CBP's unconstitutional policy or practice of holding seized vehicles without providing a prompt post-seizure hearing.

## Venue

9.      Venue is proper in the United States District Court for the Western District of Texas under 28 U.S.C. §§ 1391(b)(2) and 1391(e)(1)(B), as well as Federal Rule of Criminal

Procedure 41(g), because the seizure of Plaintiff's vehicle occurred in Eagle Pass, Texas. Eagle Pass is located in the Del Rio Division, Western District of Texas.

### The Parties

**A.    Plaintiff Gerardo Serrano**

10.    Plaintiff Gerardo Serrano is an adult citizen of the United States and a resident of Tyner, Kentucky.

11.    Plaintiff is the owner of a Ford F-250 pick-up truck, which was seized by CBP agents on September 21, 2015 in Eagle Pass, Texas.

12.    To date, Plaintiff has waited twenty-three months for a hearing to contest the validity of the seizure. That hearing has never come.

13.    In addition to raising individual claims, Plaintiff seeks to represent a class of U.S. citizens with vehicles seized by CBP and held without a post-seizure hearing.

**B.    Defendant U.S. Customs and Border Protection**

14.    Defendant U.S. Customs and Border Protection ("CBP") is a federal agency charged with patrolling the nation's international borders.

15.    Every day, CBP processes over one million international travelers at its various ports of entry, including over two hundred thousand privately-owned vehicles.

16.    Every year, CBP seizes hundreds or even thousands of vehicles owned by U.S. citizens.

17.    CBP follows a policy or practice of retaining vehicles without providing a prompt post-seizure hearing.

18.    CBP followed that policy or practice in the instant case, as it seized Plaintiff's car and held it for twenty-three months without providing any kind of hearing.

C.      **Defendant United States of America**

19.      Defendant United States of America is the national federal government established by the U.S. Constitution. As such, it is subject to limitations imposed by the Constitution—including, as relevant here, the Fourth and Fifth Amendments.

20.      The constitutional violations at issue involve the actions of federal agencies and employees and are therefore ultimately chargeable to the federal government itself.

D.      **Defendant Kevin McAleenan**

21.      Defendant Kevin McAleenan is the current Acting Commissioner of CBP.

22.      As Acting Commissioner, Defendant McAleenan is responsible for overseeing the operations of CBP, including the policies or practices that are challenged in this litigation.

23.      Defendant McAleenan is sued in his official capacity.

E.      **Defendant Juan Espinoza**

24.      Defendant Juan Espinoza is a paralegal specialist in the Fines, Penalties, and Forfeiture Office of CBP.

25.      The seizure notice in this case identified Defendant Espinoza as the primary point of contact within CBP in connection with this seizure.

26.      On information and belief, Defendant Espinoza is the CBP employee responsible for processing the forfeiture or release of Plaintiff's seized property.

27.      Plaintiff spoke with Defendant Espinoza on four separate occasions to request a prompt post-seizure hearing.

28.      Notwithstanding Plaintiff's repeated inquiries, Defendant Espinoza failed either to release Plaintiff's property or provide Plaintiff with a hearing.

29.      Defendant Espinoza is sued in his individual capacity.

F.        **Defendants John Doe 1-X**

30.        Defendants John Doe 1-X are CBP agents responsible for holding Plaintiff's truck for over twenty-three months without providing a hearing. These individuals are currently unknown, but Plaintiff expects that their identities will be uncovered in the course of discovery.

31.        Defendants John Doe 1-X have failed to return Plaintiff's truck, despite having authority to do so. They have maintained custody over Plaintiff's truck for nearly two years, despite the government's failure to provide any form of prompt post-seizure hearing.

32.        Defendants John Doe 1-X are sued in their individual capacity.

## Factual Allegations

33.        On September 21, 2015, Plaintiff attempted to pass from the United States into Mexico at the border station in Eagle Pass, Texas.

34.        Plaintiff is a United States citizen.

35.        Plaintiff drove to the border in a 2014 Ford F-250 pickup truck (V.I.N. 1FT7W2BT8EEB05) that he purchased in December 2014.

36.        Plaintiff was traveling to Mexico to meet with his cousin, who lives across the border from Eagle Pass in Piedras Negras. The cousin runs a solar panel installation business in Piedras Negras. The purpose of the trip was to meet with family and to discuss the possibility of Plaintiff joining his cousin's business as a partner to help it expand into the United States.

37.        As Plaintiff approached the border and paid the toll, he began to take photos of the border crossing on his iPhone. Plaintiff's purpose in taking these photos was to create a record of the event that he could later post on social media to share with family and friends.

38.        While Plaintiff was still within the territory of the United States, two border agents objected to Plaintiff taking photos of the border facility.

39.     Plaintiff retained a photo of these agents, reproduced below. Depending on their role in the post-seizure retention of the seized property, these agents may or may not be included within the group of unknown Defendants identified as John Doe 1-X. The agent on the left is referred to hereinafter as Agent 1, while the agent on the right is referred to as Agent 2:



40.     Agents 1 and 2 stopped Plaintiff's truck while he was still within the territory of the United States, preventing him from crossing into Mexico.

41.     Agent 1 physically removed Plaintiff from his truck, handcuffed him, and took possession of Plaintiff's phone.

42.     Plaintiff's phone was locked, so Agent 1 demanded that Plaintiff provide the password to open it.

43.     Plaintiff refused to provide the password to his phone. Plaintiff is a staunch believer in the constitutional right to privacy, who has previously run for elected office on a platform of respect for civil liberties, and Plaintiff felt as a matter of principle that it was important to exercise his constitutional right not to provide that information.

44.     As he was being held off the side of the road, Plaintiff told Agent 1 he believed his constitutional rights were being violated. Agent 1 responded that he was "sick of hearing about your rights" as "you have no rights here."

45.     Agent 2, along with an additional two unidentified CBP agents, searched Plaintiff's truck.

46.     One of the agents located five .380 caliber bullets and a .380 caliber magazine in the truck's center console.

47.     Upon discovering the bullets and magazine, Plaintiff heard an agent shout, "We got him!"

48.     Agent 1 placed Plaintiff in handcuffs and said, "You're in big trouble now."

49.     Plaintiff was unaware that the bullets and magazine were present in his truck.

50.     As he was preparing to travel to Mexico, Plaintiff initially intended to bring a handgun for personal protection. Plaintiff abandoned that plan when his cousin told him it would be unwise to bring a gun to Mexico. However, Plaintiff inadvertently failed to remove the bullets and magazine from his truck.

51.     Plaintiff had (and still has) a valid concealed-carry permit issued by his home state of Kentucky.

52.     As Plaintiff travelled from Kentucky to Eagle Pass, he travelled through Tennessee, Arkansas, and Texas. Each of those States grants reciprocity to firearm permits issued by Kentucky, meaning they grant the same privileges to holders of Kentucky permits that would be granted to holders of permits issued by that State.

53.     Another CBP agent, who appeared to be the supervisor of the other agents, arrived at the scene of the search after the bullets were found and asked Plaintiff for the passcode

to his phone. Depending on his role in the post-seizure retention of Plaintiff's property, this supervising agent may or may not be included within the group of Defendants identified as John Doe 1-X. This supervising agent is referred to hereinafter as Agent 3.

54.     Agent 3 told Plaintiff "this will go a lot easier" if Plaintiff were to provide the passcode to his phone.

55.     Plaintiff again declined to give the passcode but told Agent 3 that he would be willing to provide the passcode if the agents obtained a valid search warrant.

56.     Agent 3 directed the agents to take Plaintiff inside, and an agent walked Plaintiff to a small room in the border facility.

57.     Agents 1 and 3 proceeded to interrogate Plaintiff, with at least two other agents present in the room for part or all of the interrogation.

58.     During the interrogation, Agents 1 and 3 repeatedly asked Plaintiff to provide the passcode to his phone. Agent 3 stated that Plaintiff had "no option" to decline.

59.     Plaintiff continued to refuse to provide his passcode. Plaintiff explained that his refusal was based on his belief in the Constitution and the Bill of Rights.

60.     Plaintiff explained that he has a concealed carry permit and that it was entirely lawful for him to have the ammunition and magazine in the United States.

61.     Plaintiff showed the agents his concealed carry permit and his passport.

62.     Plaintiff explained that he was not aware the bullets and ammunition were present in his truck.

63.     As Plaintiff had not yet crossed into Mexico, Plaintiff offered to turn around and leave the border facility. He also offered to leave the bullets behind at the border facility.

64.     When Plaintiff objected that the interrogation was not following proper protocol, Agent 3 presented Plaintiff with a printed *Miranda* waiver. When Plaintiff refused to sign the waiver, Agent 3 directed that Plaintiff be placed in a detention cell.

65.     Plaintiff was placed in a locked cell in the border facility and was detained there for what seemed to Plaintiff to be about three hours.

66.     During the time Plaintiff was detained, Agent 3 came by periodically to ask Plaintiff to provide the password to his phone. Plaintiff continued to decline to provide that information.

67.     After detaining Plaintiff for several hours, Agent 3 told Plaintiff he was free to go. At the same time, Agent 3 directed Plaintiff to sign a paper notifying him that the government was seizing his truck, bullets, and magazine. Plaintiff refused to sign this piece of paper.

68.     When Plaintiff demanded to know how the government could seize his property in this manner, Agent 3 directed him to leave the facility. Plaintiff left the facility on foot as directed and walked to a nearby street in Eagle Pass.

69.     Later that day, Plaintiff returned to the border facility to ask what steps he could take to recover his property.

70.     Another CBP agent spoke to Plaintiff and informed him that the seizure of his property was the start of a long process. The agent advised Plaintiff that he should return home and wait for paperwork to arrive in the mail.

71.     On October 1, 2015, CBP sent Plaintiff a notice of seizure.

72.     The notice stated that CBP intended to forfeit the truck, bullets, and magazine seized on September 21, 2015, and asserted that this property was subject to civil forfeiture because Plaintiff had attempted to export "munitions of war" from the United States.

73.     The notice assigned the proceeding case number 2015230300013601.

74.     The notice stated that, if Plaintiff wished to challenge the seizure in court, he could "request to have this matter referred to the U.S. Attorney" and that "the case will be referred promptly to the appropriate U.S. Attorney for the institution of judicial proceedings."

75.     The notice stated that, if Plaintiff wished to have the case referred to a U.S. Attorney, he was required to post a bond equal to ten percent of the value of the seized property.

76.     The notice identified Defendant Espinoza as the point of contact at CBP for the forfeiture proceeding and provided a phone number for Defendant Espinoza.

77.     Plaintiff responded to the notice by letter on October 22, 2015. His letter demanded the immediate return of his truck. Barring the immediate return of the truck, he asked the agency to proceed immediately to court.

78.     Along with his letter, Plaintiff enclosed a check for $3,804.99 to satisfy the requirement to post a bond equal to ten percent of the value of the property.

79.     Bank records show that representatives of CBP deposited the check for $3,804.99 on or about October 30, 2015.

80.     Plaintiff called Defendant Espinoza on four separate occasions to inquire about the status of his case.

81.     Each time Plaintiff spoke with Defendant Espinoza, Defendant Espinoza assured him that the paperwork on his case was in order and that there was nothing more Plaintiff had to do to request a hearing.

82.     Defendant Espinoza stated that Plaintiff's case was taking a long time because he had asked to see a judge. Defendant Espinoza stated that the attorneys who file forfeiture cases are very busy and cannot quickly process cases.

83.     Defendant Espinoza stated that Plaintiff's forfeiture case had not even been referred to an Assistant United States Attorney, as it would not be referred to an attorney until the attorneys had time to address the case.

84.     On information and belief, Defendant Espinoza still has not referred Plaintiff's forfeiture case to an Assistant United States Attorney or any other attorney for the federal government.

85.     Plaintiff has never been contacted by any attorney for the federal government about his forfeiture case, and Plaintiff has never received paperwork identifying an attorney as responsible for the case.

86.     On December 19, 2016, Plaintiff submitted a Freedom of Information Act ("FOIA") request to CBP asking for information concerning the seizure and forfeiture of his truck.

87.     As of the date of this filing, CBP has not responded to Plaintiff's FOIA request—other than to assign the request a tracking number—although the request has been pending more than eight months.

88.     As of the date of this filing, over twenty-three months have gone by since the seizure of Plaintiff's truck and other property.

89.     As of the date of this filing, the United States has not filed a forfeiture action against Plaintiff's seized property.

90.     As of the date of this filing, the United States also has not provided Plaintiff with any other kind of post-seizure hearing to challenge the seizure and retention of his property.

91.     If Plaintiff had been provided a hearing at any point in this process, he would have obtained counsel to represent him in the proceeding. Plaintiff would have argued that CBP lacked a lawful basis to seize his vehicle, that the vehicle is not subject to forfeiture, and that forfeiture of the vehicle would violate the Constitution. Plaintiff also would have argued that CBP should be required to return the truck pending a final forfeiture decision. Plaintiff would have prevailed at such a hearing, and he would have regained possession of his truck.

92.     On information and belief, Plaintiff's truck is currently held at a seizure lot maintained by CBP.

93.     On information and belief, the vehicle is currently in the custody of Defendants John Doe 1-X, who are unknown CBP employees with responsibility for maintaining custody over seized assets.

94.     Defendants John Doe 1-X have retained Plaintiff's car in the seizure lot for this entire time, although Plaintiff has not been provided with any kind of hearing to contest the seizure or continued retention of his property.

95.     At the time Plaintiff's truck was seized, Plaintiff had other personal property stored in the truck—including, for example, a trailer hitch and a pillow. Defendants seized that personal property and have held that property, as well, without providing a post-seizure hearing.

**Injury To Plaintiff**

96.     CBP's continued seizure of Plaintiff's truck, magazine, bullets, and other personal property constitutes an ongoing injury to Plaintiff.

97.     Throughout the time his truck has been in CBP's custody, Plaintiff has been unable to use his truck. Plaintiff's truck is depreciating in value while sitting unused in CBP's impound lot.

98.     Throughout the time his truck has been in CBP's custody, Plaintiff has continued to make monthly payments of $672.97 on the loan that he took out to purchase his truck. Plaintiff has made these payments for a truck he can no longer use.

99.     In addition, throughout the time his truck has been in CBP's custody, Plaintiff has continued to pay over $700 per year to keep his truck insured. Plaintiff has made these payments for a truck he can no longer use.

100.    Plaintiff spent $1,004.61 to register his truck with the State of Kentucky for the twenty-three month period that his truck has been in CBP custody. Plaintiff made these payments for a truck he can no longer use.

101.    Plaintiff has spent significant sums on rental cars to provide an alternative form of transportation while his truck has been in CBP's custody. For example, Plaintiff spent $728.82 to rent a car from September to October 2015; $723.47 to rent a car from October to November 2015; $1,256.27 to rent a car from November to December 2015; $972.68 to rent a car from August to September 2016; $559.98 to rent a car for two weeks in September and October 2016; and $99.12 to rent a car for four days in late October 2016. Plaintiff would not have rented these vehicles but for the fact that he did not have access to his truck.

102.    In addition, Plaintiff posted a bond of $3,804.99 to obtain a hearing that has never been provided. The government still holds this $3,804.99.

103.    While Plaintiff does not have access to his truck, Plaintiff alleges on information and belief that the truck has suffered damage while in Defendants' custody.

14

104.     Other members of the proposed plaintiff class have also been injured by the violation of their Fifth Amendment rights. Every member of the proposed class has been denied a prompt post-seizure hearing to challenge the seizure and continued retention of his or her vehicle. As a result, every member of the class has been denied access to constitutionally-required procedures and has suffered a violation of due process.

### *Bivens* Allegations

105.     Plaintiff re-alleges and incorporates by reference each and every allegation set forth in ¶¶ 1 through 104 above.

106.     Defendants Juan Espinoza and John Doe 1-X (collectively, "the *Bivens* Defendants") have held Plaintiff's property for over twenty-three months (and counting) without initiating forfeiture proceedings or providing Plaintiff with any other kind of post-seizure hearing to challenge the seizure and continued retention of his property.

107.     As the official charged with processing the forfeiture of Plaintiff's property, Defendant Espinoza is directly responsible for the fact that Plaintiff's property has been held over twenty-three months without judicial process.

108.     As the officials charged with maintaining custody over Plaintiff's property, with authority to hold or release the truck, Defendants John Doe 1-X are directly responsible for the fact that Plaintiff's property has been held over twenty-three months without judicial process.

109.     A reasonable official in the *Bivens* Defendants' shoes would have understood that holding property for such a prolonged period of time without a post-seizure hearing violates due process. It is clearly established that due process requires a prompt post-seizure hearing to challenge the seizure and retention of property. *See Krimstock v. Kelly*, 306 F.3d 40 (2d Cir. 2002). And it is also clearly established that unreasonable delay in commencing forfeiture

proceedings violates due process. *See United States v. $23,407.69 in U.S. Currency*, 715 F.2d 162 (5th Cir. 1983).

110.     A reasonable official in the *Bivens* Defendants' shoes also would have understood that a seizure of property that continues for twenty-three months without any kind of judicial process violates the Fourth Amendment's prohibition on unreasonable seizures. It is clearly established that an unreasonably prolonged seizure of property violates the Fourth Amendment. *See United States v. Place*, 462 U.S. 696 (1983).

111.     There are no factors in the present case counselling hesitation in the absence of affirmative action by Congress.

112.     There are no statutory prohibitions against the relief sought.

113.     There is no exclusive statutory remedy.

## Class Action Allegations

114.     Plaintiff re-alleges and incorporates by reference each and every allegation set forth in ¶¶ 1 through 113 above.

115.     Defendants United States of America, CBP, and Acting Commissioner McAleenan (collectively, "the Class Defendants") engage in a policy or practice of seizing vehicles for civil forfeiture without providing a prompt post-seizure hearing to contest the validity of the seizure and/or the retention of the property pending a final forfeiture decision.

116.     This policy or practice is directly contrary to *Krimstock v. Kelly*, 306 F.3d 40 (2d Cir. 2002), which holds that due process requires that government provide a prompt post-seizure hearing when it seizes vehicles for civil forfeiture. Under *Krimstock*, such a hearing must provide the property owner an opportunity to contest the legality of the seizure and the continued retention of the property pending the final disposition of the forfeiture proceeding.

117.     The federal forfeiture statutes that govern seizures by CBP do not require the Class Defendants to provide a prompt post-seizure hearing at which the property owner can contest the legality of the seizure and the continued retention of the property.

118.     Because federal statutes do not require the Class Defendants to provide a prompt post-seizure hearing, the Class Defendants do not provide such a hearing.

119.     In every case in which CBP seizes property for civil forfeiture, the Class Defendants fail to provide the property owner with a prompt-post seizure hearing at which the property owner can contest the legality of the seizure and the continued retention of the property.

120.     To remedy the Class Defendants' policy or practice of not providing a prompt post-seizure hearing, Plaintiff seeks class-wide injunctive relief under Federal Rule of Civil Procedure 23(b)(2) directing the Class Defendants to provide a prompt post-seizure hearing whenever they seize vehicles from U.S. citizens under the civil forfeiture laws.

121.     A class action is superior to other available methods for the fair and efficient adjudication of this controversy. Individual challenges to this unconstitutional policy or practice will, by their nature, often become moot when a hearing is finally provided or the vehicle is returned. A class action will allow for effective, class-wide relief to remedy this ongoing and repeated violation of the Fifth Amendment.

122.     Plaintiff proposes the following class definition: "All U.S. citizens whose vehicles are or will be seized by CBP for civil forfeiture and held without a post-seizure hearing."

123.     This action meets all the Rule 23(a) prerequisites for maintaining a class action.

124.     ***Numerosity under Rule 23(a)(1)***: The putative class is so numerous that joinder of all members is impracticable.

   a.   In the relatively brief period between October 1, 2014 and September 30, 2015, for example, CBP seized at least 122 vehicles from U.S. citizens and lawful residents in Eagle Pass, Texas.

   b.   During that same period, CBP seized hundreds more vehicles from U.S. citizens and lawful residents in other nearby locations. CBP seized 363 vehicles from U.S. citizens and lawful residents in El Paso, 23 vehicles in Del Rio, and 17 vehicles in Presidio.

   c.   These kinds of seizures occur regularly. In Eagle Pass alone, CBP seized 92 vehicles from U.S. citizens and lawful residents in Fiscal Year 2014, 122 vehicles in Fiscal Year 2015, and 142 vehicles in Fiscal Year 2016.

   d.   Every year an injunction remains in effect, CBP will seize vehicles from additional U.S. citizens, giving rise to new class members.

   e.   The number of current and future class members numbers in the thousands.

   f.   The members of the proposed class are dispersed across the United States, with many living far from the location where their vehicle was seized.

125.     ***Commonality under Rule 23(a)(2)***: This action presents questions of law and fact common to the putative class, resolution of which will not require individualized determinations of the circumstances of any particular plaintiff. Common questions include but are not limited to:

18

    a. Do the Class Defendants have a policy or practice of denying vehicle owners a prompt post-seizure hearing at which the owners may challenge the validity of the seizure and the continued retention of the vehicles?

    b. Does the Class Defendants' policy or practice of failing to provide a prompt post-seizure hearing violate the Due Process Clause of the Fifth Amendment?

126.    ***Typicality under Rule 23(a)(3)***: Plaintiff's claim seeking a post-seizure hearing is typical of the claims of the putative class.

    a. Plaintiff's claim seeking a post-seizure hearing arises out of the Class Defendants' policy or practice of failing to provide a prompt post-seizure hearing. This same policy or practice affects the other members of the class.

    b. Plaintiff seeks the same relief for himself and other members of the class: A requirement that CBP provide a post-seizure hearing.

127.    ***Adequacy of representation under Rule 23(a)(4)***: The interests of the putative class are fairly and adequately protected by Plaintiff and his attorneys.

    a. Plaintiff adequately represents the putative class because his interests are aligned and there are no conflicts of interest between the Plaintiff and members of the putative class.

    b. Plaintiff and the putative class members are ably represented *pro bono* by the Institute for Justice ("the Institute"). The Institute is a nonprofit, public-interest law firm that since its founding in 1991 has litigated constitutional issues nationwide. The Institute has a particular expertise in litigating to protect property rights, including challenging civil-forfeiture programs on

constitutional grounds. In bringing this action, the Institute has done extensive work to identify and investigate Plaintiffs' claims.

128.    This action also meets the requirements of, and is brought in accordance with, Rule 23(b)(2) of the Federal Rules of Civil Procedure. The Class Defendants have acted, or refused to act, on grounds generally applicable to the class. Final injunctive and declaratory relief is appropriate with respect to all of the members of the class.

129.    Finally, this action meets the definability/ascertainability requirement, to the extent that requirement applies to Rule 23(b)(2) actions. *See O'Donnell v. Harris Cty*, No. H—16-1414, 2017 WL 1542457, at *3 (S.D. Tex. April 28, 2017) (reasoning that precise ascertainability is not required when the only class-wide relief requested is injunctive and declaratory in nature). The membership of the class is ascertainable because CBP maintains records of the identity of individuals whose vehicles are seized.

## Individual Claims

### Count I:
### Claim for Return of Property Currently Held
### In Violation of the Fourth and Fifth Amendments

130.    Plaintiff re-alleges and incorporates by reference each and every allegation set forth in ¶¶ 1 through 129 above.

131.    Plaintiff brings this claim for return of seized property against Defendants CBP and United States of America under Federal Rule of Criminal Procedure 41(g).

132.    Plaintiff is entitled to the immediate return of his truck and all of its contents, his five bullets and his magazine, and the $3,804.99 that he posted as a bond.

133.    Plaintiff's property must be returned because the ongoing seizure of Plaintiff's property without a post-seizure hearing violates the Fourth and Fifth Amendments.

134.     Plaintiff's property must also be returned because the government's delay in seeking forfeiture is so extreme that any forfeiture proceeding would be barred as a violation of due process under *United States v. $23,407.69 in U.S. Currency*, 715 F.2d 162 (5th Cir. 1983).

135.     In addition, Plaintiff's bond money must be returned because the requirement to post a bond as a condition of obtaining a hearing violates due process. A hearing is required whenever the government takes property, and the government cannot condition that right to a hearing on the property owner posting a bond.

<u>**Count II:**</u>
***Bivens* Claim for Compensatory Damages**
**Under the Fourth Amendment**

136.     Plaintiff re-alleges and incorporates by reference each and every allegation set forth in ¶¶ 1 through 135 above.

137.     Plaintiff brings this claim for compensatory damages against Defendants Espinoza and John Doe 1-X (collectively, "the *Bivens* Defendants") under *Bivens v. Six Unknown Named Agents*, 403 U.S. 388 (1971).

138.     The *Bivens* Defendants' seizure of Plaintiff's property for over twenty-three months, without judicial process, violates the Fourth Amendment's prohibition on unreasonable seizures. The government cannot seize property for months without judicial process.

139.     Defendant Espinoza is responsible for the unconstitutional seizure of Plaintiff's property, as Defendant Espinoza has processed Plaintiff's case for civil forfeiture without providing for any kind of post-seizure judicial process.

140.     Defendants John Doe 1-X are also responsible for the unconstitutional seizure of Plaintiff's property, as they have maintained custody of Plaintiff's truck for over twenty-three months although Plaintiff has never been provided any form of judicial process.

141.     As a direct and proximate result of the *Bivens* Defendants' actions, Plaintiff has suffered injury, as set forth more fully at ¶¶ 96-103.

142.     An award of compensatory damages is necessary to remedy the *Bivens* Defendants' violation of the Fourth Amendment prohibition against unreasonable seizures.

**Count III:**
***Bivens* Claim for Compensatory Damages
Under the Fifth Amendment**

143.     Plaintiff re-alleges and incorporates by reference each and every allegation set forth in ¶¶ 1 through 142 above.

144.     Plaintiff brings this claim for compensatory damages against Defendants Espinoza and John Doe 1-X (collectively, "the *Bivens* Defendants") under *Bivens v. Six Unknown Named Agents*, 403 U.S. 388 (1971).

145.     The *Bivens* Defendants' retention of Plaintiff's property, without a post-seizure hearing, violates the Due Process Clause of the Fifth Amendment.

146.     Due process requires that the government provide a prompt post-seizure hearing at which the property owner can challenge the seizure and continued retention of the property. The *Bivens* Defendants have retained Plaintiff's property without such a hearing.

147.     Due process also requires that the government institute forfeiture proceedings without undue delay after seizing property for civil forfeiture. The *Bivens* Defendants have retained Plaintiff's property although the government has not commenced a forfeiture case.

148.     Defendant Espinoza is responsible for the deprivation of Plaintiff's due process rights, as Defendant Espinoza has processed Plaintiff's case for civil forfeiture without providing Plaintiff a post-seizure hearing.

149.     Defendants John Doe 1-X are also responsible for the deprivation of Plaintiff's due process rights, as Defendants John Doe 1-X have maintained custody of Plaintiff's truck although the government has failed to provide a post-seizure hearing.

150.     As a direct and proximate result of the *Bivens* Defendants' actions, Plaintiff has suffered injury, as set forth more fully at ¶¶ 96-103.

151.     An award of compensatory damages is necessary to remedy the *Bivens* Defendants' violation of the Fifth Amendment's guarantee of due process of law.

### Class Claim

### Count IV:
### Claim for Class-Wide Injunctive and Declaratory Relief
### Under the Fifth Amendment

152.     Plaintiff re-alleges and incorporates by reference each and every allegation set forth in ¶¶ 1 through 151 above.

153.     Plaintiff brings this claim against Defendants United States of America, U.S. Customs and Border Protection, and Acting Commissioner McAleenan (collectively, "the Class Defendants") under Federal Rule of Civil Procedure 23(b)(2).

154.     After seizing vehicles for civil forfeiture, the Class Defendants fail to provide a prompt post-seizure hearing at which the vehicle owner can challenge the legality of the seizure and the continued retention of the property pending the forfeiture proceeding.

155.     The Class Defendants' policy or practice of not providing a prompt post-seizure hearing violates due process. *See Krimstock v. Kelly*, 306 F.3d 40 (2d Cir. 2002).

156.     In addition, the Class Defendants condition the provision of *any* post-seizure hearing (prompt or not) on the posting of a bond.

157.     The Class Defendants violate due process when they condition the right to a prompt post-seizure hearing on the posting of a bond.

158.     As a direct and proximate result of the Class Defendants' policy or practice, Plaintiff and other members of the putative class have suffered injury, including being deprived of their vehicles without a meaningful opportunity to be heard.

159.     This due process violation affects every case in which the Class Defendants seize vehicles for civil forfeiture—as the Class Defendants fail to provide a prompt post-seizure hearing in every case—and is therefore appropriately addressed by a class-wide injunction.

160.     Declaratory and injunctive relief is necessary to remedy the Class Defendants' unconstitutional conduct of retaining property without a hearing. Without appropriate declaratory and injunctive relief, the Class Defendants' unconstitutional policies and practices will continue.

**<u>Request for Relief</u>**

**WHEREFORE**, Plaintiff respectfully requests that this Court:

A.     Order Defendants CBP and the United States of America to immediately return Plaintiff's seized property—his truck and all its contents, his five bullets and magazine, and his bond money—under Federal Rule of Criminal Procedure 41(g).

B.     Award Plaintiff compensatory damages against Defendants Espinoza and John Doe 1-X for the violation of Plaintiff's Fourth and Fifth Amendment rights in an amount to be proven at trial. Plaintiff's damages include, but are not limited to, the amount of regular loan and insurance payments made during the time that Plaintiff has been without access to his truck, the amounts Plaintiff has paid to obtain alternative transportation while without access to his truck, and compensation for any damage to Plaintiff's property while in Defendants' possession.

C.     Certify a class under Federal Rule of Civil Procedure 23(b)(2) consisting of all U.S. citizens whose vehicles are or will be seized by CBP for civil forfeiture and held without a post-seizure hearing.

D.      Issue class-wide declaratory relief against Defendants CBP, United States of America, and Acting Commissioner McAleenan (collectively, "the Class Defendants") declaring as unconstitutional under the Due Process Clause of the Fifth Amendment the Class Defendants' policy or practice of failing to provide prompt post-seizure hearings to U.S. citizens whose vehicles have been seized for civil forfeiture.

E.      Issue class-wide injunctive relief against the Class Defendants enjoining the Class Defendants from continuing to seize vehicles from U.S. citizens for civil forfeiture without providing a prompt post-seizure hearing.

F.      Enter an award against all Defendants allowing Plaintiff to recover his attorney's fees, costs, and expenses in this action under 28 U.S.C. § 2412.

G.      Award any further equitable or legal relief the Court may deem just and proper.

Dated: September 6, 2017                    Respectfully submitted,

                                             /s/ Anya Bidwell
                                            Anya Bidwell (TX Bar No. 24101516)
                                            INSTITUTE FOR JUSTICE
                                            816 Congress Avenue, Suite 960
                                            Austin, TX 78701
                                            Tel: (512) 480-5936
                                            Fax: (512) 480-5937
                                            Email: abidwell@ij.org

                                            Darpana M. Sheth*
                                            Robert Everett Johnson*
                                            INSTITUTE FOR JUSTICE
                                            901 North Glebe Road, Suite 900
                                            Arlington, VA 22203
                                            Tel: (703) 682-9320
                                            Fax: (703) 682-9321
                                            Email: dsheth@ij.org
                                                       rjohnson@ij.org

                                            *Attorneys for Plaintiff*

                                            * Motions for Admission *Pro Hac Vice*
                                             Filed Contemporaneously.

## CERTIFICATE OF SERVICE

I hereby certify that, on this 6th day of September, 2017, I electronically filed the

Complaint with the Clerk of Court using the CM/ECF system.

I further certify that I caused a copy of the foregoing Complaint to be sent by certified

mail to the following addresses:

Ms. Stephanie Rico                          U.S. Customs and Border Protection
Civil Process Clerk                         1300 Pennsylvania Ave. NW
Office of the United States Attorney        Washington, DC 20229
For the Western District of Texas
601 N.W. Loop 410, Suite 600                U.S. Customs and Border Protection
San Antonio, TX 78216-5597                  Field Office
                                            109 Shiloh Dr., Suite 300
Attorney General Jeff Sessions              Laredo, TX 78045
U.S. Department of Justice
950 Pennsylvania Avenue, NW                 Acting Commissioner Kevin McAleenan
Washington, DC 20530-0001                   U.S. Customs and Border Protection
                                            1300 Pennsylvania Ave. NW
                                            Washington, DC 20229

I further certify that I caused a copy of the foregoing Complaint to be sent by process

server to the following address:

Juan Espinoza, Fines, Penalties, and Forfeiture Paralegal Specialist
U.S. Customs and Border Protection
ATTN: Fines, Penalties and Forfeiture Office,
Lincoln/Juarez Bridge -- Building II
Laredo, TX 78040


/s/ Anya Bidwell

26