# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF TEXAS
## DEL RIO DIVISION

| | |
|---|---|
| GERARDO SERRANO, on behalf of himself and all others similarly situated, | |
| *Plaintiff*, | |
| v. | Civil Action No. <u>2:17-cv-00048-AM-CW</u> |
| U.S. CUSTOMS AND BORDER PROTECTION; | |
| UNITED STATES OF AMERICA; | |
| KEVIN McALEENAN, Acting Commissioner, U.S. Customs and Border Protection, sued in his official capacity; | |
| JUAN ESPINOZA, Fines, Penalties, and Forfeiture Paralegal Specialist, sued in his individual capacity; | |
| JOHN DOE 1-X, Unknown U.S. Customs and Border Protection agents, sued in their individual capacities; | |
| *Defendants*. | |

## PLAINTIFF'S RESPONSE TO MOTION TO DISMISS
## OF DEFENDANTS UNITED STATES OF AMERICA, UNITED STATES CUSTOMS AND BORDER PROTECTION, AND KEVIN McALEENAN

Anya Bidwell (TX Bar No. 24101516)
INSTITUTE FOR JUSTICE
816 Congress Ave., Suite 960
Austin, TX 78701
Tel: (512) 480-5936
Email: abidwell@ij.org

Robert E. Johnson* (VA Bar No. 83219)
Darpana Sheth* (NY Bar No. 4287918)
INSTITUTE FOR JUSTICE
901 North Glebe Rd., Suite 900
Arlington, VA 22203
Tel: (703) 682-9320
Email: rjohnson@ij.org
        dsheth@ij.org

*Admitted *Pro Hac Vice*

*Attorneys for Plaintiff Gerardo Serrano and the Proposed Plaintiff Class*

**TABLE OF CONTENTS**

INTRODUCTION ......................................................................................................... 1

BACKGROUND ........................................................................................................... 3

ANALYSIS ................................................................................................................... 7

   I.   This Case Is Not Moot ........................................................................................ 7

      A.  Plaintiff's Individual Claims Are Not Moot ................................................ 8

      B.  Plaintiff's Class Claim Is Not Moot ........................................................... 8

   II.   Plaintiff's Claims Are Not Barred By Sovereign Immunity............................. 12

   III.  Plaintiff Has Stated A Claim On The Merits ................................................... 13

      A.  Plaintiff Has Stated A Claim For The Return Of His Remaining
         Property......................................................................................................... 13

      B.  Plaintiff Has Stated A Claim That Defendants Are Obligated To
         Provide Prompt Post-Seizure Hearings........................................................ 15

CONCLUSION............................................................................................................. 18

# TABLE OF AUTHORITIES

**CASES**                                                                                **PAGE(S)**

*Alvarez v. Smith*,
    558 U.S. 87 (2009) ................................................................................................11, 12

*Ancient Coin Collectors Guild v. U.S. Customs and Border Prot.*,
    801 F. Supp. 2d 383 (D. Md. 2011) ..................................................................................5

*Armstrong v. Exceptional Child Ctr., Inc.*,
    135 S. Ct. 1378 (2015) ....................................................................................................13

*Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*,
    403 U.S. 388 (1971) .....................................................................................................1, 12

*Brown v. District of Columbia*,
    115 F. Supp. 3d 56 (D.D.C. 2015) ..............................................................................3, 16

*Collins v. Morgan Stanley Dean Witter*,
    224 F.3d 496 (5th Cir. 2000) ............................................................................................4

*Cty. of Riverside v. McLaughlin*,
    500 U.S. 44 (1991) .......................................................................................2, 9, 10, 11

*Fontenot v. McCraw*,
    777 F.3d 741 (5th Cir. 2015) .....................................................................................10, 11

*Fuentes v. Shevin*,
    407 U.S. 67 (1972) ..........................................................................................................16

*Garcia v. United States*,
    538 F. Supp. 814 (S.D. Tex. 1982) .................................................................................13

*Genesis Healthcare Corp. v. Symczyk*,
    569 U.S. 66 (2013) ..........................................................................................................10

*Gerstein v. Pugh*,
    420 U.S. 103 (1975) ........................................................................................................10

*Hernandez v. United States*,
    86 F. Supp. 2d 331 (S.D.N.Y. 2000) ..............................................................................12

*Kadonsky v. United States*,
    No. 96-cv-2969, 1991 WL 460293 (N.D. Tex. Aug. 4, 1998) .........................................14

*Krimstock v. Kelly*,
    306 F.3d 40 (2d Cir. 2002)........................................................................2, 3, 11, 15, 16

*Leonard v. Texas*,
    137 S. Ct. 847 (2017)..............................................................................................1, 3

*Resolute Forest Prods. v. USDA*,
    219 F. Supp. 3d 69 (D.D.C. 2016)..........................................................................12

*Sandoz v. Cingular Wireless LLC*,
    553 F.3d 913 (5th Cir. 2008).................................................................................10

*Smith v. City of Chicago*,
    524 F.3d 834 (7th Cir. 2008).....................................................................3, 15, 16

*U.S. Parole Comm'n v. Geraghty*,
    445 U.S. 388 (1980)..............................................................................................10

*United States v. $8,850 in U.S. Currency*,
    461 U.S. 555 (1983)..............................................................................................13

*United States v. $23,407.69 in U.S. Currency*,
    715 F.2d 162 (5th Cir. 1983)...........................................................................13, 14

*United States v. $277,000 in U.S. Currency*,
    69 F.3d 1491 (9th Cir. 1995)................................................................................14

*United States v. $515,060.42 in U.S. Currency*,
    152 F.3d 491 (6th Cir. 1998)................................................................................14

*United States v. James Daniel Good Real Prop.*,
    510 U.S. 43 (1993)...........................................................................................5, 16

*United States v. Morgan*,
    84 F.3d 765 (5th Cir. 1996)...............................................................................4, 17

*United States v. Von Neumann*,
    474 U.S. 242 (1986)........................................................................................16, 17

*Washington v. Marion Cty. Prosecutor*,
    264 F. Supp. 3d 957 (S.D. Ind. 2017)...............................................2, 3, 11, 16

*Wilson v. Gordon*,
    822 F.3d 934 (6th Cir. 2016).........................................................................10, 11

*Zeidman v. J. Ray McDermott & Co.*,
    651 F.2d 1030 (5th Cir. 1981). ......................................................................10

<u>R</u>ULES

Fed. R. Civ. P. Supp. R. G. ...............................................................................9

Fed. R. Civ. P. Supp. R. G(6) ...........................................................................9

W.D. Tex. R. CV-7(h) ........................................................................................1

<u>C</u>ODES

5 U.S.C. § 702.........................................................................................2, 12, 13

18 U.S.C. § 983(a)(3)(A) ....................................................................................5

18 U.S.C. § 983(i)(2)(A) .....................................................................................5

19 U.S.C. § 1604 .................................................................................................5

19 U.S.C. § 1608 .................................................................................................4

31 U.S.C. § 9705 .................................................................................................3

Tex. Penal Code § 46.02(a)(2)(B).....................................................................13

<u>O</u>THER <u>A</u>UTHORITIES

Dick M. Carpenter II, Lisa Knepper, Angela C. Erickson, Jennifer McDonald,
    *Policing for Profit: The Abuse of Civil Asset Forfeiture* (2nd ed. 2015)............................3

William B. Rubenstein,
    *Newberg on Class Actions*, § 2:13 (5th ed. 2012). ...........................................9

Plaintiff Gerardo Serrano respectfully submits this opposition to the Motion to Dismiss of Defendants United States of America, United States Customs and Border Protection, and Kevin McAleenan (Doc. 49). Plaintiff requests an oral hearing pursuant to Local Rule CV-7(h).

## INTRODUCTION

This is a case about civil forfeiture, a legal mechanism that allows law enforcement to "seize property with limited judicial oversight" and that has "led to egregious and well-chronicled abuses." *Leonard v. Texas*, 137 S. Ct. 847, 848 (2017) (Thomas, J., concurring in the denial of certiorari). United States Customs and Border Protection ("CBP") seized Plaintiff Gerardo Serrano's truck for civil forfeiture because agents found five bullets and a magazine in the center console. Gerardo requested a hearing before a judge—posting a bond of $3,804.99, as instructed by the agency—but two years passed without Gerardo seeing the inside of a court.

Finally, Gerardo filed this lawsuit, seeking three separate types of relief: (1) return of the seized property, including the truck, ammunition, magazine, and bond money; (2) an award of class-wide declaratory and injunctive relief against the United States, CBP, and the CBP Commissioner, directing CBP to provide a prompt post-seizure hearing whenever it seizes vehicles for civil forfeiture; and (3) compensatory damages from the responsible federal officials, who were sued in their individual capacities under *Bivens v. Six Unknown Named Agents*, 403 U.S. 388 (1971). Just over one month later, CBP emailed Gerardo's attorneys to say it was giving back the truck. The agency offered no explanation for its change of heart.

Now, Defendants the United States, CBP, and CBP Commissioner McAleenan say this case should be dismissed as moot. *See* Doc. 49 at 4-5.[1] This argument should be rejected for the

_____

[1] The federal officials sued under *Bivens* filed an additional motion to dismiss arguing that Plaintiff has failed to state a claim under *Bivens* and that Plaintiff's damages claims are barred by

simple reason that Defendants still hold Gerardo's property. Defendants have made no move to return Gerardo's five bullets and magazine, and while Defendants recently sent a letter saying that they will return Gerardo's bond money (without interest) they have not actually done so. The Complaint seeks the return of all that property. *See* Compl. ¶¶ 130-35.

Even apart from the fact that Defendants are still holding Gerardo's property, this case is not moot for the additional reason that Gerardo seeks relief on behalf of an entire class. *See Cty. of Riverside v. McLaughlin*, 500 U.S. 44, 51-52 (1991). As the Second Circuit explained, in a case endorsing the same due process claim that Gerardo advances here, "the termination of a class representative's claim does not moot the claims of the unnamed members of the class," and that is true even where "the class [is] not certified until after the named plaintiffs' claims had become moot." *Krimstock v. Kelly*, 306 F.3d 40, 70 n.34 (2d Cir. 2002) (Sotomayor, J.) (internal quotation marks omitted); *see also Washington v. Marion Cty. Prosecutor*, 264 F. Supp. 3d 957, 969-71 (S.D. Ind. 2017) (certifying class to pursue this same due process challenge after named plaintiff's vehicle had been returned).

In addition to claiming mootness, Defendants also argue that Gerardo's claims are barred by sovereign immunity. *See* Doc. 49 at 5. However, sovereign immunity only bars claims for "money damages," 5 U.S.C. § 702, so the doctrine cannot bar Gerardo's claims for injunctive and declaratory relief. Likewise, Gerardo's claim for return of his bond money seeks specific property, rather than damages, and so is not barred. While Gerardo does seek compensatory damages, he brings those claims *only* against federal officials sued in their individual capacity

---

qualified immunity. Doc. 50. Plaintiff is filing a separate memorandum to respond to that separate motion to dismiss.

under *Bivens*. *See* Compl. ¶¶ 137, 144. Gerardo does not seek to recover damages from the United States, CBP, or the CBP Commissioner, so sovereign immunity does not apply.

Finally, Defendants argue that Gerardo has failed to state a claim, as "post-seizure hearings are not constitutionally-required." Doc. 49 at 6. Numerous courts, however, hold that due process demands a prompt post-seizure hearing at which vehicle owners can challenge the validity of the seizure and continued retention of their property pending the filing of a forfeiture case. *See Krimstock*, 306 F.3d at 69; *Washington*, 264 F. Supp. 3d at 978-79; *Brown v. District of Columbia*, 115 F. Supp. 3d 56, 60 (D.D.C. 2015); *see also Smith v. City of Chicago*, 524 F.3d 834, 838 (7th Cir. 2008), *vacated as moot* 558 U.S. 87 (2009). This Court should reject Defendants' invitation to part ways with the numerous federal courts that have already addressed this issue and endorsed Plaintiff's due process claim.

## BACKGROUND

### A.     The Government's Civil Forfeiture Scheme

Civil forfeiture is a legal mechanism that allows the government to take property based on allegations that it was used in connection with a violation of the criminal law, without having to actually convict anyone of a crime. *See generally* Dick M. Carpenter II, et al., *Policing for Profit* (2d ed. 2015). When CBP takes property using civil forfeiture, the proceeds are deposited in a special fund where they are available to fund CBP's budget. *See* 31 U.S.C. § 9705. Civil forfeiture thus allows law enforcement to "seize property with limited judicial oversight and retain it for their own use," creating "strong incentives to pursue forfeiture." *Leonard v. Texas*, 137 S. Ct. 847, 848 (2017) (Thomas, J., concurring in the denial of certiorari).

When CBP seizes property for civil forfeiture, the agency sends the property owner a notice document setting forth four potential courses of action. *See* Doc. 50-2.[2]

*First,* the notice invites the property owner to abandon any interest in the property, which will allow the agency to forfeit the property without opposition. Doc. 50-2 at 3.

*Second*, the notice invites the property owner to submit an "offer in compromise," meaning an offer to pay money to settle the case. Doc. 50-2 at 2. The notice instructs the owner to include a check for the proposed settlement amount along with the offer. *Id.*

*Third*, the notice invites the property owner to file a so-called petition for remission or mitigation. Doc. 50-2 at 1-2. A remission petition is "a request for leniency, or an executive pardon," which invites the agency to exercise its discretion not to pursue the forfeiture. *United States v. Morgan*, 84 F.3d 765, 767 n.3 (5th Cir. 1996). A property owner filing a remission petition "does not contest the legitimacy of the forfeiture" and instead asks the agency to return the property as a matter of grace. *Id.* A remission petition therefore does not provide an avenue to contest the validity of the seizure or the forfeiture of the property.

*Fourth*, the notice invites the property owner to "request to have this matter referred to the U.S. Attorney for institution of judicial forfeiture proceedings." Doc. 50-2 at 3. A property owner making such a request is required to submit a claim to the property and post a bond equal to ten percent of the property's value. *Id.*; *see also* 19 U.S.C. § 1608.

---

[2] The government has submitted as an exhibit the notice document that was sent to Plaintiff in this case. *See* Doc. 50-2. Plaintiff agrees that this Court can properly take judicial notice of that document—without converting the government's motion to one for summary judgment—because it is referenced in the Complaint and central to Plaintiff's claims. *See, e.g., Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498-99 (5th Cir. 2000). Because the government's copy of the notice is partially obscured by a mailing label and so not fully legible, Plaintiff has attached a copy here. *See* Exhibit B. In addition, and for substantially the same reasons, this Court can also take judicial notice of the claim forms that Plaintiff submitted in response to the notice. *See* Exhibit C.

After a seizure is referred to the U.S. Attorney, federal law instructs the U.S. Attorney to file a forfeiture case "without delay" but does not set a specific time for the U.S. Attorney to act. 19 U.S.C. § 1604.[3] The Supreme Court has held that this reference to "delay" does not provide a judicially-administrable standard, with the result that the only statutory deadline for the government to file a forfeiture action in a customs case is the one set by the applicable statute of limitations—in most cases, five years. *See United States v. James Daniel Good Real Prop.*, 510 U.S. 43, 65 (1993).

**B.      The Seizure Of Gerardo's Truck**

Plaintiff Gerardo Serrano is a U.S. citizen (born and raised in Chicago) and a resident of Tyner, Kentucky. Compl. ¶ 10. Gerardo previously ran for state elected office on a platform of respect for Americans' constitutional rights. *Id.* ¶ 43.

In September 2015, Gerardo attempted to travel to Mexico via Eagle Pass to visit family in Piedras Negras. *Id.* ¶ 36. Gerardo, an avid user of social media, began taking photos of the border crossing on his iPhone so that he could later share them with family and friends. *Id.* ¶ 37. While Gerardo was still within the United States, two border agents objected to his taking photos. *Id.* ¶ 38. They removed Gerardo from his truck, handcuffed him, and demanded that he provide the password to his phone. *Id.* ¶¶ 41-42. Because Gerardo believes that it is important for Americans to assert their constitutional rights, he told the agents he would only provide the

---

[3] CBP sometimes seizes property under laws that are not specific to the customs context, and in those cases the Civil Asset Forfeiture Reform Act of 2000 ("CAFRA") directs the U.S. Attorney to file a case within 90 days of the property owner submitting a claim of ownership to the property. *See* 18 U.S.C. § 983(a)(3)(A). Under the so-called "customs carve-out," however, CAFRA does not apply to forfeiture actions based on alleged violations of the customs laws. *See id.* § 983(i)(2)(A); *see also Ancient Coin Collectors Guild v. U.S. Customs and Border Prot.*, 801 F. Supp. 2d 383, 418 (D. Md. 2011) (so holding).

password if they obtained a warrant. *Id.* ¶¶ 43, 55, 59. One of the agents told Gerardo he was "sick of hearing about your rights" as "you have no rights here." *Id.* ¶ 44.

As Gerardo was being held at the side of the road, several border agents searched the inside of his truck. *Id.* ¶ 45. When the agents found five .380 caliber bullets and a .380 caliber magazine in the truck's center console, one of the agents called out, "We got him!" *Id.* ¶¶ 46, 47. Another agent told Gerardo: "You're in big trouble now." *Id.* ¶ 48.

Gerardo holds a valid concealed carry permit in his home state of Kentucky, and as he travelled to Eagle Pass he passed through States that all grant reciprocity to that firearm permit. *Id.* ¶ 52. Gerardo had initially intended to bring a handgun with him to Mexico for personal protection, but he abandoned that plan when a cousin told him that would be unwise because Mexico does not have the same Second Amendment freedoms as the United States. *Id.* ¶ 50. Gerardo, however, inadvertently failed to remove the bullets and magazine from his truck. *Id.*

The border agents detained Gerardo for approximately three hours, during which they continued to demand that he provide the password to his phone. *Id.* ¶¶ 65-66. Finally, the agents told Gerardo he was free to go, but that they were seizing his bullets, his magazine, and his pickup truck. *Id.* ¶ 67. Gerardo left the facility on foot. *Id.* ¶ 68.

### C.    The Government Holds Gerardo's Truck Without A Hearing

On October 1, 2015, CBP sent Gerardo a notice of seizure, which stated that CBP intended to forfeit the truck, ammunition, and magazine. *Id.* ¶¶ 71-72. The notice claimed that this property was subject to civil forfeiture because Plaintiff had attempted to export "munitions of war" from the United States. *Id.* The notice gave Gerardo a choice to either seek administrative relief via a remission petition or to challenge the seizure in court, and it stated that Gerardo was required to post a bond equal to ten percent of the value of the property if he

wanted a court hearing. *Id.* ¶ 75. Gerardo demanded a hearing in court and posted the required

bond by sending a check for $3,804.99. *Id.* ¶¶ 77-78. Bank records show that CBP deposited the

bond money on or about October 30, 2015. *Id.* ¶ 79.

Then almost two years passed without Gerardo receiving any kind of hearing at which he

could challenge the validity of the seizure or the continued retention of his property. *Id.* ¶¶ 88-90.

The seizure notice gave Gerardo a number he could call for information, and Gerardo called that

number on four separate occasions to ask when he would get his day in court. *Id.* ¶ 80. Each

time, Gerardo was told that all the paperwork for his case was in order and that all he could do

was wait. *Id.* ¶¶ 81-82. Gerardo also submitted a Freedom of Information Act ("FOIA") request

for information about his case, but after eight months CBP had not responded. *Id.* ¶¶ 86-87.

Gerardo filed this lawsuit on September 6, 2017. Doc. 1. Late that month, CBP finally

produced documents in response to Gerardo's FOIA request. Then, on October 16, 2017, a CBP

attorney contacted Gerardo's lawyers via email to say the agency was returning Gerardo's truck.

Doc. 49-1. Another two months later, on December 22, 2017, CBP sent a letter stating that

Gerardo's $3,804.99 in bond money had been "processed for refund" and that the money will be

returned without any payment of interest. *See* Exhibit A. The letter says to "allow 30 to 60 days

to receive the refund," *id.*, and as of this date the money has not arrived. CBP has made no move

to return the seized ammunition and magazine. Moreover, CBP has provided no explanation for

its decision to return Gerardo's vehicle two years after it was seized.

## ANALYSIS

### I.     This Case Is Not Moot.

Defendants first argue that this case should be dismissed because the return of Plaintiff's

truck moots his non-*Bivens* claims. This argument fails for at least two reasons. First, Plaintiff's

individual claims are not moot because CBP continues to hold unlawfully-seized property. Second, regardless of whether Plaintiff's individual claims are moot, Plaintiff can continue to press forward with his claim on behalf of the class.

### A.   Plaintiff's Individual Claims Are Not Moot.

Plaintiff's individual claims are not moot for the simple reason that Defendants continue to hold Plaintiff's property. While Defendants have said that they will return Plaintiff's cost bond—without any payment of interest—at this date they have not actually done so. Moreover, Defendants have made no move to return Plaintiff's ammunition and magazine.

Plaintiff's Complaint sought the return of all this property, in addition to his truck. In particular, Count I of the Complaint alleged that Plaintiff "is entitled to the immediate return of his truck and all of its contents, his five bullets and his magazine, and the $3,804.99 that he posted as a bond." Compl. ¶ 132. Plaintiff alleged that this property must be returned because "the ongoing seizure of Plaintiff's property without a post-seizure hearing violates the Fourth and Fifth Amendments," *id.* ¶ 133, and because "the government's delay in seeking forfeiture is so extreme that any forfeiture proceeding would be barred as a violation of due process," *id.* ¶ 134. Because the government still holds Gerardo's property, these claims are not moot.

### B.   Plaintiff's Class Claim Is Not Moot.

Gerardo's claim for injunctive and declaratory relief also is not moot, as Gerardo raises that claim on behalf of a class. Absent class members still have live claims for injunctive and declaratory relief, and, under the "relation-back" doctrine, Gerardo can press his class-wide claims on behalf of the class.

There is no real question that absent class members have live claims for relief. As explained at length in Plaintiff's Reply in Support of Class Certification, Defendants do not seriously dispute that they seize thousands of vehicles from U.S. citizens for civil forfeiture

every single year. Every single one of those vehicle owners is a member of the proposed class and suffers the same injury, as federal forfeiture laws provide no mechanism to obtain the kind of prompt post-seizure hearing that due process requires. Instead, a property owner who wants to go to court has to file a claim and wait for the government to file its forfeiture case. *See* Doc. 50-2 (setting forth options available to property owners). Moreover, even after a forfeiture case is filed, the property owner must continue to wait for the case to culminate in a decision on the merits. *See* Fed. R. Civ. P. Supp. R. G (setting forth procedures applicable to civil forfeiture cases).[4] This system does not provide for a prompt post-seizure opportunity to challenge the seizure and retention of property, and for that reason Defendants create a new class member every time they seize a vehicle for civil forfeiture.

Under the "relation-back" doctrine, Gerardo can continue to litigate on behalf of this class regardless of whether he will personally benefit from an award of injunctive or declaratory relief. It is well established that mootness of a named plaintiff's individual claims *after* class certification does not moot a class action. *See, e.g., Cty. of Riverside v. McLaughlin*, 500 U.S. 44, 51-52 (1991). The relation-back doctrine extends this rule to cases where the named plaintiff's claims become moot *before* certification; if the doctrine applies, certification is "'related back' to the time of the filing of the complaint" and this "'relating back' puts the case . . . within the familiar doctrinal setting that enables the mooted named plaintiff to continue pursuing the class's claims." Newberg on Class Actions § 2:13 (5th ed.). So, for instance, *McLaughlin* applied the doctrine to claims challenging the government's failure to provide a prompt post-arrest probable cause hearing, explaining that the fact that "the class was not certified until after the named

---

[4] Among other things, even if the property owner files a motion to dismiss, the rules provide that the government is entitled to obtain discovery from the property owner before responding to the motion to dismiss. *See* Fed. R. Civ. P. Supp. R. G(6).

plaintiffs' claims had become moot does not deprive us of jurisdiction." 500 U.S. at 51-52; *see also U.S. Parole Comm'n v. Geraghty*, 445 U.S. 388, 399 (1980). Application of the relation-back doctrine is appropriate here for two independent reasons.

First, the relation-back doctrine applies because the claims at issue are "inherently transitory," as they naturally become moot when the seizure ends or a hearing is provided. For this reason, the Supreme Court has twice applied the relation-back doctrine to claims challenging pretrial detention without a prompt post-arrest probable cause hearing. *See McLaughlin*, 500 U.S. at 52; *Gerstein v. Pugh*, 420 U.S. 103, 110 n.11 (1975).[5] This case follows naturally from those precedents: If a claim challenging detention of a person without a prompt post-arrest hearing is inherently transitory, it follows that a claim challenging detention of property without a prompt post-seizure hearing is inherently transitory as well.

Second, the relation-back doctrine also applies because the government has the ability to pick off named plaintiffs by voluntarily returning their seized property. In *Zeidman v. J. Ray McDermott & Co.*, 651 F.2d 1030 (5th Cir. 1981), the Fifth Circuit held that a claim qualifies as inherently transitory if the defendant can pick off named plaintiffs by satisfying their claims. This doctrine ensures that where, as here, "the plaintiffs have filed a timely motion for class certification and have diligently pursued it, the defendants should not be allowed to prevent consideration of that motion by tendering to the named plaintiffs their personal claims." *Id.* at 1045; *see also Sandoz v. Cingular Wireless LLC*, 553 F.3d 913, 922 (5th Cir. 2008).[6] This case

---

[5] *See also Wilson v. Gordon*, 822 F.3d 934, 945 (6th Cir. 2016) (applying relation-back doctrine where "Plaintiffs have experienced delays in receiving hearings that are measured in months, not days," and "the State can quickly process a delayed application soon after litigation begins").

[6] The Fifth Circuit has observed that *Genesis Healthcare Corp. v. Symczyk*, 569 U.S. 66 (2013), potentially cuts back the holding of *Zeidman* "in money damages cases." *Fontenot v.*

falls squarely within that holding: While this due process claim is already inherently transitory because it naturally expires when the plaintiff's property is returned or a hearing is provided, the government can also pick off named plaintiffs by speeding up that process in their cases. The relation-back doctrine ensures that such a claim does not evade review.

This case is on all fours with *Washington* and *Krimstock*, both of which applied the relation-back doctrine in similar circumstances. In *Washington*, as here, the government had returned the named plaintiff's vehicle after the case was filed but before the court could certify the class. *See* 264 F. Supp. 3d at 969-71. The court held the case not moot, as the plaintiff "seeks to represent the interests of all persons subject to the seizure of vehicles, and his class certification motion is currently pending." *Id.* at 970. The court also explained that the "inherently transitory" exception to mootness applied, as "there will be a constant class of persons suffering the deprivation complained of" and the government "could attempt to moot any named plaintiff's claim by simply returning the property." *Id.* at 971. Likewise, in *Krimstock*, the Second Circuit held that return of the named plaintiffs' cars would not moot the class-wide claims, as "the 'relation back' doctrine is properly invoked." 306 F.3d at 70 n.34 (quoting *McLaughlin*, 500 U.S. at 51-52). There is no reason why this Court should part ways with those decisions.

The government cites *Alvarez v. Smith*, 558 U.S. 87 (2009), as to the contrary, but that case actually supports Plaintiff's position. In *Alvarez*, the Court concluded that a similar due process challenge had become moot when the plaintiffs' property was returned, *id*. at 89, but that case differed in at least two critical respects. First, whereas the *Alvarez* plaintiffs had recovered

---

*McCraw*, 777 F.3d 741, 750 (5th Cir. 2015). That decision has no effect here, as Plaintiff's class action claim does not involve a suit for money damages. *See also Wilson*, 822 F.3d at 946.

*all* of their seized property, meaning "the underlying property disputes have all ended," *id.*, the government still holds some of Gerardo's property. Second, the Court in *Alvarez* noted that "a class might well contain members who continue to dispute ownership of seized property," but that the plaintiffs had abandoned their motion for class certification. *Id.* at 92-93. The Court thus suggested that the plaintiffs could have avoided mootness by pursuing a class action, which of course is precisely what Gerardo has done here.

### II.     Plaintiff's Claims Are Not Barred By Sovereign Immunity.

Defendants next argue that Gerardo's claims are barred by the doctrine of sovereign immunity. Doc. 49 at 5-6. This argument fails because Gerardo's claims all fall within well-recognized exceptions to sovereign immunity doctrine.

Gerardo's individual claims seeking the return of his seized property—namely, the ammunition, magazine, and cost bond—are not barred because they do not seek damages. *See* 5 U.S.C. § 702 (providing that sovereign immunity shall not bar an action "seeking relief other than money damages").[7] Gerardo's individual claim for compensatory damages, meanwhile, is not barred by sovereign immunity because it only seeks damages from officials sued in their individual capacities under *Bivens v. Six Unknown Named Agents*, 403 U.S. 388 (1971). *See* Compl. ¶¶ 137, 144. The officials sued under *Bivens* have filed a separate motion to dismiss Gerardo's *Bivens* claims, Doc. 50, so Gerardo does not address those issues here other than to note that *Bivens*, where it applies, serves as an exception to sovereign immunity. Defendants cannot possibly argue that sovereign immunity would bar a valid *Bivens* claim.

---

[7] This is true regardless of the fact that Gerardo's claim for his bond money would require the government to pay out money; it remains the case that this claim seeks the return of specific property rather than damages. *See, e.g.*, *Resolute Forest Prods. v. USDA*, 219 F. Supp. 3d 69, 77-78 (D.D.C. 2016); *Hernandez v. United States*, 86 F. Supp. 2d 331, 340 (S.D.N.Y. 2000).

Gerardo's claims for classwide injunctive and declaratory relief also are not barred by sovereign immunity, as they also do not seek an award of money damages. *See* 5 U.S.C. § 702. Courts hold that a "suit seeking an injunction against a federal official to enjoin the official from acting unconstitutionally is . . . not barred by the doctrine of sovereign immunity." *Garcia v. United States*, 538 F. Supp. 814, 816 (S.D. Tex. 1982); *see also Armstrong v. Exceptional Child Center, Inc.*, 135 S. Ct. 1378, 1385 (2015) ("The ability to sue to enjoin unconstitutional actions by state and federal officers is the creation of courts of equity, and reflects a long history of judicial review of illegal executive action, tracing back to England.").

### III.    Plaintiff Has Stated A Claim On The Merits.

Lastly, Defendants briefly argue that Gerardo has failed to state a claim for relief on the merits. Defendants address only Gerardo's class claim, but for the sake of completeness Gerardo addresses both his remaining individual claim for return of property and his class claim.

### A.    Plaintiff Has Stated A Claim For The Return Of His Remaining Property.

Although Defendants do not address the issue, Plaintiff has stated a claim for the return of his remaining property—specifically, his cost bond, ammunition, and magazine—as any further proceedings to forfeit the property would be barred by due process under *United States v. $8,850 in U.S. Currency*, 461 U.S. 555 (1983) and *United States v. $23,407.69 in U.S. Currency*, 715 F.2d 162 (5th Cir. 1983). *See* Compl. ¶ 134.[8]

This an even easier case than *$23,407.69*, where the Fifth Circuit held that delay in initiating forfeiture proceedings required the immediate return of seized property. 715 F.2d at

---

[8] Gerardo holds a valid concealed-carry permit issued by the State of Kentucky, and the State of Texas grants reciprocity to that permit. *See* Compl. ¶¶ 51-52. In addition, it is legal to carry ammunition in a vehicle in Texas even without a permit. *See* Tex. Penal Code § 46.02(a)(2)(B). Unless the federal government proceeds to a forfeiture of the bullets and magazine, Gerardo's possession of those items is perfectly legal, and they must be returned.

166. Each of the four factors discussed in that case (the length of delay, the reason for the delay, the defendant's assertion of his right, and prejudice to the defendant) cuts in Gerardo's favor: First, whereas *$23,407.69* involved a thirteen-month delay, this case involves a delay of nearly two years. *Id.* at 164-65. Second, whereas the government in *$23,407.69* had "delayed six months with no explanation of any kind" but had an explanation for the remainder of the delay, in this case the government has *no* explanation for its delay. *Id.* at 165-66. Third, Gerardo has done at least as much to assert his rights as the property owner in *$23,407.69*, as he demanded a prompt hearing in court and repeatedly called to ask when a hearing would be provided. *Id.* at 165. Finally, Gerardo suffered exactly the same prejudice as the property owner in *$23,407.69*, as he has been deprived of the use of his property during all the time that it was seized. *Id.* at 166. Gerardo has therefore easily stated a claim for the return of his remaining property.

In addition, Gerardo is entitled not just to return of his $3,804.99 in bond money, but to return of that money with interest. *See, e.g.*, *United States v. $515,060.42 in U.S. Currency*, 152 F.3d 491, 504 (6th Cir. 1998) ("[T]o the extent that the Government has actually or constructively earned interest on seized funds, it must disgorge those earnings along with the property itself when the time arrives for a return of the seized *res* to its owner."); *United States v. $277,000 in U.S. Currency*, 69 F.3d 1491, 1498 (9th Cir. 1995) (similar); *Kadonsky v. United States*, No. 96-cv-2969, 1991 WL 460293, at *4 (N.D. Tex. Aug. 4, 1998) (similar).[9] When the

---

[9] An award of interest is not barred by sovereign immunity because, when the government seizes and holds property, an award of interest does not constitute damages but rather "an aspect of the seized *res* to which the Government is not entitled." *$515,060.42*, 152 F.3d at 504; *see also $277,000*, 69 F.3d at 1498 ("There is no element here of forcing the government to pay for damage it has done, only that it must disgorge benefits that it has actually and calculably received from an asset that it has been holding improperly.").

government improperly holds currency for years, it cannot be allowed to profit from the transaction by earning interest on those funds.

### B. Plaintiff Has Stated A Claim That Defendants Are Obligated To Provide Prompt Post-Seizure Hearings.

Plaintiff's classwide claim for injunctive and declaratory relief—challenging CBP's failure to provide prompt, post-seizure hearings—also states a claim for relief. To be clear, this due process claim addresses a different type of due process right than the speedy-trial right discussed above in the context of Gerardo's individual claim for return of his seized property. In addition to the right to have the government file its forfeiture case without inordinate delay, property owners also have a right to a prompt hearing following the seizure—to challenge, among other things, the validity of the seizure and the continued retention of the property pending the filing of the forfeiture case. These separate due process rights are akin to the right to a post-arrest hearing and the right to a speedy criminal trial. Gerardo has stated a claim on behalf of the class that CBP violates due process *every time* it seizes a vehicle for civil forfeiture because it provides no mechanism to obtain a prompt post-seizure hearing.

Defendants argue this claim must be dismissed because "CBP is not constitutionally obligated to provide post-seizure hearings." Doc. 49 at 6. However, numerous courts hold that government is required to provide a prompt post-seizure hearing when it seizes vehicles for civil forfeiture, and the federal government is not exempt from that basic requirement of due process. In an opinion by then-Judge Sotomayor, the Second Circuit held that due process requires that vehicle owners be provided a prompt, post-seizure opportunity to challenge the legality of the seizure and the continued retention of the property pending the filing of a forfeiture case. *See Krimstock*, 306 F.3d at 44. The Seventh Circuit has agreed. *See Smith v. City of Chicago*, 524 F.3d 834, 838 (7th Cir. 2008), *vacated as moot* 558 U.S. 87 (2009). Even more recently, both the

United States District Court for the District of Columbia and the Southern District of Indiana have reached the same conclusion. *See Washington*, 264 F. Supp. 3d at 978-79; *Brown*, 115 F. Supp. 3d at 60. Defendants notably fail even to cite these cases, much less explain why this Court should depart from that line of authority.

This requirement to provide a prompt post-seizure hearing also follows naturally from the Supreme Court's decision in *United States v. James Daniel Good Real Property*, 510 U.S. 43 (1993). *See Krimstock*, 306 F.3d at 67-68 (so holding); *Smith*, 524 F.3d at 836 (same). In that case, the Supreme Court held that the federal government is required to provide a pre-seizure hearing before it can seize real property for civil forfeiture. 510 U.S. at 62. After all, the "right to prior notice and a hearing is central to the Constitution's command of due process" and can be dispensed with only in "extraordinary situations where some valid governmental interest is at stake that justifies postponing the hearing." *Id.* at 53 (quoting *Fuentes v. Shevin*, 407 U.S. 67, 82 (1972)). The Court explained that the government does have a valid basis to dispense with the requirement of a *pre*-seizure hearing when it seizes mobile property, like a vehicle, as otherwise the property owner might take the property outside the jurisdiction. *Id.* at 57. However, once property has been securely seized, that justification for postponing the hearing disappears. If government must provide a hearing *before* it can seize real property, surely government must at least provide a comparable hearing *shortly after* it seizes a vehicle—not months or years down the line.

Defendants cite *United States v. Von Neumann*, 474 U.S. 242 (1986), as contrary authority, but that case is easily distinguished. Under the scheme defendants have established, a property owner whose property has been seized for civil forfeiture has a choice to either seek discretionary relief via an administrative remission petition or to challenge the forfeiture in court.

16

*See* Doc. 50-2 (notice form setting out competing options). Importantly, a remission petition does *not* allow the property owner to challenge the legality of the seizure; to the contrary, a remission petition is "a request for leniency, or an executive pardon," and a property owner filing a petition "does not contest the legitimacy of the forfeiture." *United States v. Morgan*, 84 F.3d 765, 767 n.3 (5th Cir. 1996). Faced with this choice, the property owner in *Von Neumann* decided to file a remission petition, 474 U.S. at 245-46, whereas Gerardo decided to challenge the forfeiture in court. *See* Compl. ¶¶ 77-79. So, while *Von Neumann* establishes how due process applies to the remission petition procedure, that decision is irrelevant here for the simple reason that Gerardo did not file a remission petition.

There is a world of difference between the due process claim at issue in *Von Neumann* and the due process claim at issue here. In *Von Neumann*, the property owner claimed that the government violated due process because it took 36 days to rule on his remission petition. 474 U.S. at 243-44. The Supreme Court rejected that claim, explaining that there is no constitutional requirement to act in a timely fashion on a remission petition because "remission proceedings are not *necessary* to a forfeiture determination, and therefore are not constitutionally required." *Id.* at 250; *see also id.* (explaining that a remission petition offers "a way to resolve a dispute informally rather than in judicial forfeiture proceedings"). In other words, while due process does provide a right to timely judicial process in a civil forfeiture case, that due process right is irrelevant where a property owner elects to proceed through the remission process, as remission is an administrative procedure that is not part of the judicial process at all. By contrast, Gerardo does not claim that he was entitled to a speedy answer to a remission petition, as Gerardo *never filed* a remission petition. Gerardo claims that he was entitled to a prompt hearing before a judge. The fact that an agency can delay responding to a pardon-like request for administrative grace

does not remotely imply that an agency can seize property and hold it indefinitely without providing a hearing before a neutral magistrate.

## CONCLUSION

For the foregoing reasons, the Motion to Dismiss of Defendants United States of America, United States Customs and Border Protection, and Kevin McAleenan should be denied.

Dated: January 10, 2018                            Respectfully submitted,

                                                   /s/ Robert E. Johnson

Anya Bidwell (TX Bar No. 24101516)                 Robert E. Johnson* (VA Bar No. 83219)
INSTITUTE FOR JUSTICE                              Darpana Sheth* (NY Bar No. 4287918)
816 Congress Ave., Suite 960                       INSTITUTE FOR JUSTICE
Austin, TX 78701                                   901 North Glebe Rd., Suite 900
Tel: (512) 480-5936                                Arlington, VA 22203
Fax: (512) 480-5937                                Tel: (703) 682-9320
Email: abidwell@ij.org                             Fax: (703) 682-9321
                                                   Email: rjohnson@ij.org
                                                          dsheth@ij.org

                                                   *Admitted *Pro Hac Vice*

*Attorneys for Plaintiff Gerardo Serrano and the Proposed Plaintiff Class*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 10th day of January, 2018, a true and correct copy of the foregoing response brief was filed electronically using the CM/ECF system which will send a notice of electronic filing to all counsel of record.

/s/Robert E. Johnson