## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF TEXAS
## DEL RIO DIVISION

| | |
|---|---|
| GERARDO SERRANO, on behalf of himself and all others similarly situated, | |
| *Plaintiff*, | |
| v. | Civil Action No. <u>2:17-cv-00048-AM-CW</u> |
| U.S. CUSTOMS AND BORDER PROTECTION; | |
| UNITED STATES OF AMERICA; | |
| KEVIN McALEENAN, Acting Commissioner, U.S. Customs and Border Protection, sued in his official capacity; | |
| JUAN ESPINOZA, Fines, Penalties, and Forfeiture Paralegal Specialist, sued in his individual capacity; | |
| JOHN DOE 1-X, Unknown U.S. Customs and Border Protection agents, sued in their individual capacities; | |
| *Defendants*. | |

## PLAINTIFF'S RESPONSE TO MOTION TO DISMISS
## OF DEFENDANT JUAN ESPINOZA

Anya Bidwell (TX Bar No. 24101516)
INSTITUTE FOR JUSTICE
816 Congress Ave., Suite 960
Austin, TX 78701
Tel: (512) 480-5936
Email: abidwell@ij.org

Robert E. Johnson* (VA Bar No. 83219)
Darpana Sheth* (NY Bar No. 4287918)
INSTITUTE FOR JUSTICE
901 North Glebe Rd., Suite 900
Arlington, VA 22203
Tel: (703) 682-9320
Email: rjohnson@ij.org
           dsheth@ij.org

*Admitted *Pro Hac Vice*

*Attorneys for Plaintiff Gerardo Serrano and the Proposed Plaintiff Class*

## TABLE OF CONTENTS

INTRODUCTION ................................................................................................. 1

STANDARD OF REVIEW ................................................................................... 3

BACKGROUND .................................................................................................. 3

ARGUMENT ........................................................................................................ 5

    I.   Gerardo Properly Seeks Damages Under *Bivens* ..................................... 5

        A. Gerardo's Claims Do Not Arise In A New Context ...................... 5

           i. Gerardo's Fourth Amendment Claim Does Not Arise In A New
              Context ................................................................................. 5

           ii. Gerardo's Fifth Amendment Claim Does Not Arise In A New
              Context ................................................................................. 7

        B. There Are No Special Factors Counselling Hesitation In Recognizing
           A *Bivens* Remedy ....................................................................... 9

           i. There Is No Comprhensive Alternative Framework Available To
              Provide An Appropriate Remedy ........................................ 9

           ii. There Are No Other Factors Counselling Hesitation In Granting
              A *Bivens* Remedy ............................................................ 13

    II.  *Bivens* Defendants Are Not Entitled to Qualified Immunity ............................ 15

        A. Plaintiff's Fourth Amendment Claim Alleges A Violation Of Clearly
           Established Law ....................................................................... 16

        B. Plaintiff's Fifth Amendment Due Process Claim Alleges A Violation
           Of Clearly Established Law ...................................................... 17

CONCLUSION. ................................................................................................... 20

## TABLE OF AUTHORITIES

CASES                                                                      PAGE(S)

*Acadia Tech., Inc v. United States,*
    458 F.3d 1327 (Fed. Cir. 2006)......................................................................8

*Anderson v. Creighton,*
    483 U.S. 635 (1987)......................................................................................6

*Ashcroft v. al-Kidd,*
    563 U.S. 731 (2011)...................................................................................6, 7

*Ashcroft v. Iqbal,*
    556 U.S. 662 (2009)...................................................................................3, 7

*Bell Atl. Corp. v. Twombly,*
    550 U.S. 544 (2007)......................................................................................3

*Beltran v. United States,*
    No. 08-mc-500, 2008 WL 4791670 (W.D. Tex. Sept. 11, 2008)......................12

*Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics,*
    403 U.S. 388 (1971)............................................................................. *passim*

*Brewster v. Beck,*
    859 F.3d 1194 (9th Cir. 2017)..............................................................3, 16, 17

*Brown v. District of Columbia,*
    115 F. Supp. 3d 56 (D.D.C. 2015)..........................................................12, 19

*Bush v. Lucas,*
    462 U.S. 367 (1983)..................................................................................5, 10

*Chappell v. Wallace,*
    462 U.S. 296 (1983)....................................................................................14

*Corr. Servs. Corp. v. Malesko,*
    534 U.S. 61 (2001)..............................................................................7, 14, 20

*Davis v. Passman,*
    442 U.S. 228 (1979)...................................................................................7, 8

*Fed. Deposit Ins. Corp. v. Meyer,*
    510 U.S. 471 (1994)....................................................................................14

**PAGE(S)**

*Flores v. City of Palacios,*
    381 F.3d 391 (5th Cir. 2004). ........................................................................15

*Gines v. D.R. Horton, Inc.,*
    699 F.3d 812 (5th Cir. 2012). ..........................................................................3

*Groh v. Ramirez,*
    540 U.S 551 (2004)........................................................................................6, 7

*Hernandez v. Mesa,*
    137 S. Ct. 2003 (2017)...................................................................................15

*Hernandez v. United States,*
    757 F.3d 249 (5th Cir. 2014). ...................................................................14, 15

*Hernandez v. United States,*
    785 F.3d 117 (5th Cir. 2015) (en banc) ........................................................15

*Izen v. Catalina,*
    398 F.3d 363 (5th Cir. 2005). ........................................................................20

*Krimstock v. Kelly,*
    306 F.3d 40 (2d Cir. 2002)..............................................................3, 10, 19, 20

*Longinos-Ruiz v. United States,*
    No. 12-cv-400, 2013 WL 1785380 (N.D. Tex. Apr. 1, 2013). ......................12

*Maria S. v. Garza,*
    No. 13-cv-108, 2015 WL 4394745 (S.D. Tex. July 15, 2015). .....................15

*Martinez–Agüero v. Gonzalez,*
    459 F.3d 618 (5th Cir. 2006). ........................................................................13

*McClendon v. City of Columbia,*
    305 F.3d 314 (5th Cir. 2002). ........................................................................16

*Otero-Mendez v. United States,*
    No. 14-cv-346, 2014 WL 5488420 (W.D. Tex. Oct. 29, 2014)......................12

*Richey v. Smith,*
    515 F.2d 1239 (5th Cir. 1975). ......................................................................12

*Schweiker v. Chilicky,*
    487 U.S. 412 (1988)........................................................................................10

PAGE(S)

*Seguin v. Eide,*
    645 F.2d 804 (9th Cir. 1981). ...............................................................2, 8, 9, 13

*Smith v. City of Chicago,*
    524 F.3d 834 (7th Cir. 2008). ..............................................................................19

*States Marine Lines, Inc. v. Shultz,*
    498 F.2d 1146 (4th Cir. 1974). .............................................................2, 7, 8, 13

*United States v. $23,407.69 in U.S. Currency,*
    715 F.2d 162 (5th Cir. 1983). ...............................................................3, 17, 18

*United States v. $8,850 in U.S. Currency,*
    461 U.S. 555 (1983)..................................................................................8, 17

*United States v. Hernandez,*
    911 F.2d 981 (5th Cir. 1990). ..............................................................................12

*United States v. James Daniel Good Real Prop.,*
    510 U.S. 43 (1993)..................................................................................11, 19

*United States v. Morgan,*
    84 F.3d 765 (5th Cir. 1996). ............................................................................. 11

*United States v. Place,*
    462 U.S. 696 (1983)..............................................................................................16

*United States v. Portillo-Aguirre,*
    311 F.3d 647 (5th Cir. 2002). ...............................................................3, 16

*United States v. Price,*
    914 F.2d 1507 (D.C. Cir. 1990)..........................................................................12

*United States v. Stanley,*
    483 U.S. 669 (1987)..............................................................................................14

*United States v. Von Neumann,*
    474 U.S. 242 (1986)..............................................................................................20

*Washington v. Marion Cty. Prosecutor,*
    264 F. Supp. 3d 957 (S.D. Ind. 2017). ...............................................................19

*Wilkie v. Robbins,*
    551 U.S. 537 (2007)..............................................................................................5, 9

**PAGE(S)**

*Wilson v. Birnberg*,
    667 F.3d 591 (5th Cir. 2012). ............................................................................3

*Ziglar v. Abbasi*,
    137 S. Ct. 1843 (2017)............................................................................ *passim*

**RULES**

Fed. R. Civ. P. 12(b)(6)........................................................................................3

Fed. R. Crim. P. 41(g)......................................................................................9, 12

W.D. Tex. R. CV-7(h) .........................................................................................1

**CODES**

19 U.S.C. § 1604 ...............................................................................................11

19 U.S.C. § 1608 ...............................................................................................11

42 U.S.C. § 1983 ...............................................................................................20

Plaintiff Gerardo Serrano respectfully submits this response in opposition to the Motion to Dismiss of Defendant Juan Espinoza (Doc. 50). Plaintiff requests an oral hearing pursuant to Local Rule CV-7(h).

## INTRODUCTION

Agents of the U.S. Customs and Border Protection ("CBP") seized Plaintiff Gerardo Serrano's pickup truck after they found a magazine with five low-caliber bullets in the center console. Defendants Juan Espinoza and John Doe 1-X (the "*Bivens* Defendants") then held Gerardo's truck for over two years, even though Gerardo was not provided with *any* kind of post-seizure hearing. During that two-year period, Gerardo continued to make loan payments on a truck he could not drive, paid thousands of dollars to keep the truck insured and registered, and spent thousands of dollars on rental cars. Gerardo also posted a bond in the amount of $3,804.99 to request a hearing in court. When Gerardo called Defendant Espinoza to ask when a hearing would be provided, Defendant Espinoza told him he just had to wait.

Finally, Gerardo filed this lawsuit, alleging violations of the Fourth and Fifth Amendments. The Complaint sought (1) return of the seized property, including the truck, ammunition, magazine, and bond money; (2) class-wide declaratory and injunctive relief against the United States, CBP, and the CBP Commissioner, directing CBP to provide a prompt post-seizure hearing whenever it seizes vehicles for civil forfeiture; and (3) compensatory damages from Defendants Espinoza and John Doe 1-X under *Bivens v. Six Unknown Named Agents*, 403 U.S. 388 (1971). Just over one month later, a CBP attorney emailed Gerardo's lawyers to say the agency was giving back the truck. CBP still holds Gerardo's $3,804.99 in bond money—although the government recently sent a letter stating that the money will eventually be returned

without interest—and Gerardo has received no compensation whatsoever for the damages that he incurred as a result of the prolonged seizure of his property.

Now, Defendant Espinoza argues that Gerardo's *Bivens* claim for compensatory damages must be dismissed. *See* Doc. 50.[1] In essence, Defendant asserts that the government can hold property for years without providing any kind of a post-seizure hearing and then simply walk away—leaving the property owner to pay the bill. That, however, is not the law.

Defendant asserts that *Bivens* does not apply to this case because it arises in a "new context," Doc. 50 at 5-14, but in fact this case arises in the "search-and-seizure context" where the Supreme Court has just recently reaffirmed *Bivens* as a "fixed principle in the law." *Ziglar v. Abbasi*, 137 S. Ct. 1843, 1856-57 (2017). Lower courts have in fact repeatedly applied *Bivens* to claims like those at issue here. *See, e.g., Seguin v. Eide*, 645 F.2d 804, 807 (9th Cir. 1981) (customs officials detained car for approximately six months without a hearing); *States Marine Lines, Inc. v. Shultz*, 498 F.2d 1146, 1156-57 (4th Cir. 1974) (customs officials detained property for approximately seventeen months without a hearing). Moreover, even if the context were somehow new, that would not bar a *Bivens* claim where (as here) there are no "special factors counselling hesitation" in allowing a *Bivens* remedy. *Ziglar*, 137 S. Ct. at 1857-58. While the Supreme Court has signaled caution when expanding *Bivens*, this case falls within the existing core of the *Bivens* remedy—meaning application of *Bivens* should not be in doubt.

---

[1] While the motion is only filed on behalf of Defendant Espinoza, the government notes that its arguments on behalf of Defendant Espinoza "likely" also apply to the unnamed John Doe Defendants. *See* Doc. 50 at 1 n.1. In addition, the United States, CBP, and CBP Commissioner have filed a separate motion to dismiss arguing that Gerardo's claims for return of property and for class-wide injunctive and declaratory relief are moot and that Gerardo has failed to state a claim on the merits. *See* Doc. 49. Gerardo is filing a separate memorandum to respond to that separate motion to dismiss.

Defendant also claims that he is entitled to qualified immunity, Doc. 50 at 14-16, but in fact Gerardo's claims allege violations of clearly-established law. Courts agree that the Fourth Amendment bars prolonged seizures of property without judicial process. *See Brewster v. Beck,* 859 F.3d 1194, 1197 (9th Cir. 2017); *United States v. Portillo-Aguirre*, 311 F.3d 647, 655-56 (5th Cir. 2002). Likewise, there is no doubt that due process bars government from holding seized property without a timely post-seizure hearing. *See, e.g.*, *Krimstock v. Kelly*, 306 F.3d 40, 69 (2d Cir. 2002) (Sotomayor, J.); *United States v. $23,407.69 in U.S. Currency*, 715 F.2d 162, 165 (5th Cir. 1983). No reasonable government official would think that they could hold a seized vehicle for two years without any form of judicial oversight.

## STANDARD OF REVIEW

When reviewing a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a court must accept as true all facts of the complaint and construe them in the light most favorable to the plaintiff. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Gines v. D.R. Horton, Inc*., 699 F.3d 812, 816 (5th Cir. 2012). A court does not need to determine whether a plaintiff's victory is probable. *Wilson v. Birnberg*, 667 F.3d 591, 600 (5th Cir. 2012). Rather, the inquiry must focus on whether the facts pled, if true, would entitle the plaintiff to relief. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007). "Dismissal is improper if the allegations support relief on any possible theory." *Wilson*, 667 F.3d at 595 (internal quotation marks omitted).

## BACKGROUND

Plaintiff set forth the relevant facts in the background section of his Response to the Motion to Dismiss of Defendants United States of America, United States Customs and Border Protection, and Kevin McAleenan, and Plaintiff incorporates that discussion here. Plaintiff adds to that discussion the following facts particular to his *Bivens* claims.

Gerardo has sued Defendant Juan Espinoza under *Bivens* because Defendant Espinoza is the CBP employee responsible for processing the forfeiture or release of his property. Compl. ¶ 26. When Gerardo received notice documents from CBP following the seizure, the notice identified Defendant Espinoza as the primary point of contact within CBP in connection with the case. *Id.* ¶ 25. The notice provided a phone number to reach Defendant Espinoza, and Gerardo called Defendant Espinoza on four occasions to request a court hearing. *Id.* ¶¶ 25, 27. In response, Defendant Espinoza assured Gerardo that his paperwork was in order and told him he simply had to wait. *Id.* ¶ 81. Defendant Espinoza failed to either provide Gerardo with a timely post-seizure hearing or release his truck without unreasonable delay. *Id.* ¶ 28.

Gerardo has also sued unnamed Defendants John Doe 1-X under *Bivens*, as they are the additional CBP agents responsible for holding Gerardo's truck for over two years without a hearing. Compl. ¶ 30. The John Doe Defendants maintained custody over Gerardo's truck for two years, despite the government's failure to provide any kind of post-seizure hearing. *Id.* ¶ 31. Gerardo expects to learn the identities of the John Doe Defendants in discovery. *Id.* ¶ 30.

By keeping Gerardo's truck for a prolonged period without a post-seizure hearing, these *Bivens* Defendants caused significant injury. Gerardo's truck depreciated in value as it sat outside in a parking lot for two years, and Gerardo was unable to drive the truck that entire time. Compl. ¶ 97. Gerardo continued to make loan, insurance, and registration payments for a truck he could not drive. *Id.* ¶¶ 98-100. He also spent thousands of dollars on rental cars. *Id.* ¶ 101. While the government returned Gerardo's truck after he filed this case—and has recently stated that it will return Gerardo's bond money (without interest) sometime in the future—it has provided no compensation for the damages that Gerardo incurred.

**ARGUMENT**

**I.      Gerardo Properly Seeks Damages Under *Bivens*.**

The Supreme Court has developed a particular framework to evaluate *Bivens* claims.

First, courts ask whether the claim arises in a new context—meaning a context where the

Supreme Court has not previously applied *Bivens*. *See, e.g., Ziglar v. Abbasi*, 137 S. Ct. 1843,

1859-60 (2017). If the context is *not* new, the analysis stops there and *Bivens* applies. *Id*. at 1860.

If the context is new, then the court must ask "whether any alternative, existing process for

protecting the interest amounts to a convincing reason for the Judicial Branch to refrain from

providing a new and freestanding remedy in damages" and whether there are "any special factors

counselling hesitation before authorizing a new kind of federal litigation." *Wilkie v. Robbins,* 551

U.S. 537, 550 (2007) (citing *Bush v. Lucas*, 462 U.S. 367, 378 (1983)).

Applying this framework, this is a proper case for a *Bivens* claim. First, the context is not

new. In fact, this is precisely the kind of search-and-seizure case where application of *Bivens* has

been affirmed by the Supreme Court as "a fixed principle in the law." *Ziglar*, 137 S. Ct. at 1856-

57. Second, even imagining the context were somehow new, there are no special factors, such as

a comprehensive remedial scheme, that counsel hesitation applying *Bivens* to Gerardo's case.

**A.      Gerardo's Claims Do Not Arise In A New Context.**

Neither Gerardo's Fourth Amendment nor his Fifth Amendment claim arises in a new

context. As such, he should be allowed to proceed under *Bivens*.

> *i.      Gerardo's Fourth Amendment Claim Does Not Arise In A New Context.*

Gerardo's claim that his Fourth Amendment rights were violated by the unreasonably

prolonged seizure of his truck arises in the type of search-and-seizure context that has long been

around. In *Bivens* itself, the plaintiff alleged that he was subjected to an illegal search and

arrested without probable cause. 403 U.S. 388, 389 (1971). The Supreme Court allowed the plaintiff to recover damages from the responsible federal officers, holding that the Fourth Amendment "guarantees to citizens of the United States the absolute right to be free from unreasonable searches and seizures carried out by virtue of federal authority" and that damages may be obtained for violations of that guarantee. *Id.* at 392. Nothing the Supreme Court has said since chips away at that recognition. To the contrary, just last year the Court reaffirmed the core holding of *Bivens*: "[I]t must be understood that this opinion is not intended to cast doubt on the continued force, or even the necessity, of *Bivens* in the search-and-seizure context in which it arose." *Ziglar,* 137 S. Ct. at 1856. "The settled law of *Bivens* in this common and recurrent sphere of law enforcement, and the undoubted reliance upon it as a fixed principle in the law, are powerful reasons to retain it in that sphere." *Id.* at 1857.

Notwithstanding the longstanding application of *Bivens* to search-and-seizure cases, Defendant argues this case arises in a new context because the Supreme Court has not previously applied *Bivens* in the "asset forfeiture context." Doc. 50 at 7. However, there is no call to frame the inquiry at that level of specificity. To the contrary, the Supreme Court has repeatedly decided cases involving all manner of Fourth Amendment *Bivens* claims without questioning whether such claims are allowed. In *Groh v. Ramirez*, the Supreme Court recognized a *Bivens* claim challenging a search pursuant to a deficient warrant. 540 U.S 551, 563-64 (2004). In *Ashcroft v. al-Kidd*, the Supreme Court did not question whether *Bivens* applied to a Fourth Amendment claim challenging pretextual detention under the Material Witness Statute. 563 U.S. 731, 743 (2011). And in *Anderson v. Creighton*, the Court assumed that *Bivens* applied to a claim challenging the warrantless search of a home to find a robbery suspect. 483 U.S. 635, 636-37 (1987). Gerardo's claim that his property was retained for an unreasonably long period of time—

a classic search-and-seizure claim—falls no further from the unreasonable arrest and warrantless search at issue in *Bivens* than the defective warrant in *Groh* or the pretextual detention policy in *al-Kidd*. The Supreme Court was evidently satisfied that those cases arose within the search-and-seizure context at the core of *Bivens*. The same result should apply here.

          *ii.*     *Gerardo's Fifth Amendment Claim Does Not Arise In A New Context.*

Gerardo's Fifth Amendment due process claim, challenging the retention of his property without any post-seizure judicial process, also falls within the established *Bivens* context.

The Supreme Court has recognized that *Bivens* applies to claims challenging violations of the Fifth Amendment. The Court has specifically stated that, "[i]n the decade following *Bivens*, we recognized an implied damages remedy under the Due Process Clause of the Fifth Amendment." *Corr. Servs. Corp. v. Malesko,* 534 U.S. 61, 67 (2001). In *Davis v. Passman*, a case involving alleged gender discrimination, the Court implied a *Bivens* cause of action under the Fifth Amendment and held that "a damages remedy is surely appropriate." 442 U.S. 228, 245 (1979). And in *Ashcroft v. Iqbal*, a case that involved arrests and detentions in the aftermath of the September 11 attacks, the Supreme Court impliedly approved the existence of a *Bivens* claim under the Fifth Amendment, even as it questioned the existence of a *Bivens* claim under the First Amendment. 556 U.S. 662, 675 (2009).

Even more specifically, the Supreme Court in *Passman* approvingly cited a decision from the Fourth Circuit involving facts materially indistinguishable from those at issue here. 442 U.S. at 244 n.22. In *States Marine Lines, Inc. v. Shultz*, the owner of cargo freight seized by customs agents sued in federal court seeking return of the property and damages under *Bivens*, claiming that detention of the property for approximately seventeen months violated due process. 498 F.2d 1146, 1153-54, 1157 (1974). As here, the property owner had repeatedly asked customs officials

to move quickly to process the forfeiture, but the officials failed to act, offering no explanation apart from "delay in the bureaucratic process or government 'red tape.'" *Id.* at 1148. As here, the government finally returned the property after the lawsuit was filed. *Id.* Nonetheless, the Fourth Circuit allowed the *Bivens* claim to proceed, holding that "the claim presented is obviously appropriate for money damages" because "government officers, under the cloak of federal statutory authorization vested in them, have deprived plaintiff of his property in violation of the Constitution resulting in considerable damages." *Id.* at 1157. Moreover, while the Supreme Court has indicated that the "new context" test focuses on the decisions of the Supreme Court, *Ziglar*, 137 S. Ct. at 1859, the Supreme Court implicitly endorsed this decision in *Passman* when it cited it to support the conclusion that the plaintiff in that case also had "a cause of action under the Fifth Amendment." 442 U.S. at 244 & n.22.

Following *States Marine Lines*, the Ninth Circuit has also held that a plaintiff can pursue a *Bivens* remedy on strikingly similar facts. *See Seguin v. Eide*, 720 F.2d 1046, 1048 (9th Cir. 1983); *see also Acadia Tech., Inc v. United States*, 458 F.3d 1327, 1334-35 (Fed. Cir. 2006) (citing both *Seguin* and *States Marine Lines*). In *Seguin*, a customs official kept a widow's car for approximately six months without a hearing and only released it after the U.S. Attorney's office declined to bring a forfeiture action. *Seguin v. Eide*, 645 F.2d 804, 807 (9th Cir. 1981).[2] The Ninth Circuit affirmed the existence of a *Bivens* remedy, reasoning that it was important to act on the seizure promptly since the car was "a rapidly depreciating asset" and concluding that,

---

[2] The Ninth Circuit decided in favor of the plaintiff in *Seguin* twice. After the decision was first issued, *Seguin v. Eide*, 645 F.2d 804, 807 (9th Cir. 1981), the Supreme Court remanded for reconsideration in light of *United States v. $8,850*, 461 U.S. 555 (1983), which is the case that recognized a requirement for a prompt forfeiture hearing. *See* 462 U.S. 1101 (1983). The Ninth Circuit reexamined the part of the decision dealing with the jury instructions and again affirmed for the plaintiff. *Seguin v. Eide*, 720 F.2d 1046, 1047-48 (9th Cir. 1983).

despite the car being eventually released, the widow should be allowed damages for lost use of the vehicle. *Id*. at 806, 809. This case and Gerardo's are on all fours: Both involve prolonged seizures of vehicles without post-seizure hearings, and in both the vehicles were eventually returned. *Seguin* held that the vehicle owner could pursue a Fifth Amendment claim under *Bivens* and that damages were owed. This court should do the same.

**B.    There Are No Special Factors Counselling Hesitation In Recognizing A *Bivens* Remedy.**

If (and only if) this Court finds that Gerardo's claims arise in a new context, then it must decide whether any "special factors" prevent extension of *Bivens*. *Wilkie v. Robbins,* 551 U.S. 537, 550 (2007). The two types of factors that the Supreme Court has found sufficient to deny a *Bivens* remedy are (1) a comprehensive alternative remedial framework and (2) concerns regarding the type of government activity involved or the status of particular federal defendants. Gerardo's case does not involve either.

*i.    There Is No Comprehensive Alternative Framework Available To Provide An Appropriate Remedy.*

Defendant claims that an alternative remedial framework exists because CBP's notice of seizure provided Gerardo with four options—one of which was to abandon the property—that together constitute a comprehensive remedial process. Doc. 50 at 10. In addition, Defendant argues that Gerardo's ability to file a motion for return of property (a "41(g) motion") provides a framework to address his injuries. *Id*. But none of these options redresses Gerardo's Fourth and Fifth Amendment claims; to the contrary, Gerardo claims that this administrative scheme *itself* violates the Constitution because it provides no way to obtain a prompt post-seizure hearing. As such, these "alternatives" fall short of the kind of comprehensive remedial scheme that the Court has said prevents application of *Bivens*.

Cases declining to extend *Bivens* on this basis have involved remedial schemes set up to redress the very same types of violations that the plaintiffs alleged. In *Bush v. Lucas*, 462 U.S. 367 (1983), a federal employee claiming that his demotion was unlawful First Amendment retaliation did not have a *Bivens* remedy because he could seek redress under the Civil Service and Reform Act. *Id.* at 385-86. The Court emphasized that Congress had established the Civil Service and Reform Act to address precisely that type of injury. *Id.* at 388-90. Meanwhile, in *Schweiker v. Chilicky*, 487 U.S. 412 (1988), the Court denied a *Bivens* remedy to plaintiffs who alleged that the erroneous termination of their disability benefits violated due process. *Id.* at 414. The Court found *Bivens* inapplicable because the plaintiffs could instead appeal the benefits denial. *Id.* at 428-29. The Court emphasized that, in both *Lucas* and *Schweiker*, the "harm resulting from the alleged constitutional violation can in neither case be separated from the harm resulting from the denial of [a] statutory right." *Id.* In other words, because the plaintiffs alleged denial of a statutory right that was coextensive with the claimed constitutional right, the Court would not apply *Bivens* to augment the statutory scheme.

The administrative scheme that Defendant points to here is easily distinguished, as it does not address the constitutional wrongs suffered by Gerardo. Whereas the plaintiffs in *Lucas* and *Chilicky* alleged that the government had violated the relevant statute, Gerardo alleges that the government *followed* the relevant statutes but that the statutes themselves violate the Constitution. *See, e.g.,* Compl. ¶¶ 117-19. Gerardo claims the Constitution requires a prompt post-seizure hearing whenever government seizes a vehicle for civil forfeiture, to allow the vehicle owner to challenge the validity of the seizure and the continued retention of the property pending the filing of a forfeiture case. *See, e.g.*, *Krimstock v. Kelly*, 306 F.3d 40, 44 (2d Cir. 2002) (so holding). The government's civil forfeiture scheme, however, does not provide for

10

such a hearing and so results in a violation of due process every time the government seizes a vehicle for civil forfeiture. An administrative scheme that itself violates the Constitution cannot possibly provide an "alternative" remedy for that violation.

Closer examination of the four options provided in CBP's notice of seizure shows that they do not address the violation at issue in this case, as none provides a right to a prompt post-seizure hearing or a remedy where such a hearing is denied. *See* Doc. 50-2. Two options set forth in CBP's notice—to abandon the seized property or propose a settlement—invite acquiescence to the seizure and are not remedies at all. A third option, to file a so-called remission petition, initiates an administrative proceeding in which the government has total discretion to retain or return the property. *See, e.g., United States v. Morgan*, 84 F.3d 765, 767 n.3 (5th Cir. 1996) (explaining that a remission petition is "a request for leniency, or an executive pardon"). That discretionary procedure again provides no rights or remedies. Finally, the fourth option allows a property owner to pay a bond and request a hearing, at which point the relevant statute directs the U.S. Attorney for the district to "proceed" to file a forfeiture action. 19 U.S.C. § 1608. The statute does not set a timeline for the U.S. Attorney to file and does not provide a remedy if the U.S. Attorney fails to move quickly.[3] Indeed, while Gerardo chose this fourth option in this case, he nonetheless waited two years for the government to bring his case to court. *See* Compl. ¶¶ 88-90. These four options do not provide for the kind of prompt hearing required by the Constitution, and they provide no remedy if such a hearing is denied.

---

[3] Federal law instructs the U.S. Attorney to file a forfeiture case "without delay," 19 U.S.C. § 1604, but the Supreme Court has held that this reference to "delay" does not set a judicially-administrable standard, with the result that the only statutory deadline for the government to file a forfeiture action in a customs case is the one set by the applicable statute of limitations—in most cases a period of five years. *See United States v. James Daniel Good Real Prop.*, 510 U.S. 43, 65 (1993).

The ability to file a 41(g) motion also does not remedy these constitutional violations. A 41(g) motion does not provide for prompt post-seizure hearing, as a 41(g) motion is a cumbersome process that initiates an entire civil action (with all the attendant delays) rather than a quick and simple hearing on the validity of the seizure.[4] Worse, courts hold that a 41(g) motion does not actually provide a means to challenge the legality of a seizure in the civil forfeiture context, as "the proper place to litigate the legality of the seizure is in the forfeiture proceeding." *United States v. Hernandez,* 911 F.2d 981, 983 (5th Cir. 1990). In other words, "once the Government initiates an administrative forfeiture proceeding" by sending a notice of seizure, "the District Court has no jurisdiction to resolve the issue of return of property." *United States v. Price*, 914 F.2d 1507, 1511 (D.C. Cir. 1990). And even if a court can entertain a 41(g) motion, the action is governed by "equitable principles" and the decision to provide a remedy is within the court's "sound discretion." *Richey v. Smith*, 515 F.2d 1239, 1243 (5th Cir. 1975). The United States District Court for the District of Columbia has therefore rejected the suggestion that a 41(g) motion provides the kind of prompt post-seizure hearing that due process requires. *See Brown v. District of Columbia*, 115 F. Supp. 3d 56, 65 (D.D.C. 2015). The ability of property owners to file a 41(g) motion does not provide for a prompt hearing and does not afford a meaningful remedy where a prompt hearing is denied. It therefore does not remedy the violations at issue and cannot preclude a *Bivens* remedy.

---

[4] This case proves the point, as Gerardo included a claim for return of property under Rule 41(g) as Count I of his Complaint and four months later is mired in briefing on the government's motion to dismiss even as the government continues to hold some (though not all) of his property. *See also Longinos-Ruiz v. United States*, No. 12-cv-400, 2013 WL 1785380 (N.D. Tex. Apr. 1, 2013) (decision on 41(g) motion issued nine months, twenty-four days after motion filed); *Otero-Mendez v. United States*, No. 14-cv-346, 2014 WL 5488420 (W.D. Tex. Oct. 29, 2014) (six months, eight days); *Beltran v. United States*, No. 08-mc-500, 2008 WL 4791670 (W.D. Tex. Sept. 11, 2008) (two months, nineteen days).

Moreover, the *only* relief a property owner can obtain through the procedural avenues highlighted by Defendant is the return of the property, which is not a sufficient remedy for this violation. *See Ziglar*, 137 S. Ct. at 1858 (equitable remedies may not preclude application of *Bivens* where damages are "necessary to redress past harm and deter future violations"). As the Ninth Circuit has observed, the "fast depreciating nature of an automobile" means a prolonged seizure "may impose onerous burdens upon a person deprived of his vehicle." *Senguin*, 645 F.2d at 809. Accordingly, the ability to seek return of the property is "plainly an inadequate substitute for a *Bivens* action." *Id.* at 811; *see also States Marine Lines*, 498 F.2d at 1157 (noting "necessity and appropriateness of judicial relief" where a prolonged seizure has resulted in "considerable damages"). Government should not be allowed to hold property for years without a hearing and then walk away as if nothing has happened.

> ii.    *There Are No Other Factors Counselling Hesitation In Granting A* Bivens *Remedy.*

Defendant also argues that a *Bivens* remedy is not advisable because "border agents may hesitate before acting" which in turn "may impede one of law enforcement's most powerful weapons for preventing crime." Doc. 50 at 13 (alterations and citations omitted). However, the risk that border agents may hesitate before seizing property is not a bad thing; the decision to seize property is not one that needs to be made quickly, and we should want government agents to hesitate before unlawfully holding property for years without a hearing. These same concerns have the potential to arise in every case involving law enforcement—many of which involve decisions that do have to be made quickly and under pressure—and yet courts apply *Bivens* all the same. *See, e.g., Martinez–Agüero v. Gonzalez,* 459 F.3d 618, 621-25 (5th Cir. 2006) (allowing *Bivens* action for use of excessive force by border agent). Cases finding "special factors counseling hesitation" involve weightier concerns than these.

In a series of five cases, the Supreme Court has provided examples of what it considers to be special factors preventing application of *Bivens*, and all involved highly particularized fields of activity or classes of defendants. *Chappell v. Wallace*, 462 U.S. 296, 300 (1983), and *United States v. Stanley*, 483 U.S. 669, 683-84 (1987), dealt with the special dynamics of military service. *Correctional Services Corp. v. Malesko,* 534 U.S. 61, 63-64, 72-73 (2001), refused to extend *Bivens* to an action against a private prison, reasoning that private prisons are already subject to state common law tort actions. *Federal Deposit Insurance Corp. v. Meyer*, 510 U.S. 471, 473 (1994), refused to extend *Bivens* to federal agencies, reasoning that the remedy is designed to apply to individual officers and not entire administrative bodies. Finally, *Ziglar* arose in the national security context, and the Court declined to extend the *Bivens* remedy to high-ranking decision-makers in the executive branch. 137 S. Ct. at 1861.[5] Gerardo's claim does not implicate anything resembling these special dynamics. His case involves a search-and-seizure context, very much of the type already recognized in *Bivens*.

Against this, Defendant attempts to suggest that this case is special because it arises at the border, *see* Doc. 50 at 14, but the fact that the seizure took place at the border does not change the fact that this is ultimately a case about law enforcement seizures. The Fifth Circuit has held that *Bivens* applies at the border: In *Hernandez v. United States*, the Fifth Circuit allowed a *Bivens* remedy against a border agent who shot and killed a teenager on the Mexican side of the

---

[5] Specifically, the plaintiff there sued the former Attorney General, the FBI Director, and the Commissioner of the Immigration and Naturalization Service. 137 S. Ct. at 1853. The Court expressed concern that allowing a *Bivens* action against these kinds of senior executive branch officials for the exercise of policymaking authority would "require inquiry and discovery into the whole course of the discussions and deliberations that led to the policies and governmental acts being challenged" and in turn "prevent them—or, to be more precise, future officials like them—from devoting the time and effort required for the proper discharge of their duties." *Id.* at 1860. At the same time, the Court allowed for the possibility that a lower-ranking official (the warden of the prison where the plaintiff was detained) could be liable in a *Bivens* action. *Id.* at 1864-65.

U.S.-Mexico border. 757 F.3d 249, 276-77 (5th Cir. 2014).[6] Although the case was set on the border and involved a border agent, the Fifth Circuit found that "the case before us involves questions of precisely *Bivens*-like domestic law enforcement and nothing more." *Id.* at 276. Similarly, in *Maria S. v. Garza*, the Southern District of Texas reasoned that, despite the events taking place at the border and involving border agents who pressured an illegal immigrant to sign a voluntary departure form, "the presence of an immigration issue, in and of itself, does not lead one to conclude that an extension of a *Bivens* remedy should be denied." No. 13-cv-108, 2015 WL 4394745, at *11 (S.D. Tex. July 15, 2015). Both *Hernandez* and *Maria S.* demonstrate that border agents are not given a free pass simply because they operate on the border.

## II.    *Bivens* Defendants Are Not Entitled to Qualified Immunity.

In addition to contesting the application of *Bivens*, Defendant argues that he is entitled to qualified immunity. Doc. 50 at 14-16. Qualified immunity, however, does not apply where "it would have been clear to a reasonable officer that the alleged conduct was unlawful in the situation he confronted." *Ziglar*, 137 S. Ct. at 1867 (internal quotation marks omitted). "The law can be clearly established despite notable factual distinctions between the precedents relied on and the cases then before the court, so long as the prior decisions gave reasonable warning that the conduct then at issue violated constitutional rights." *Flores v. City of Palacios*, 381 F.3d 391, 400 (5th Cir. 2004) (internal quotation marks omitted). In addition, courts in the Fifth Circuit look to cases from other circuits, as well as the Supreme Court, to determine whether a federal

---

[6] The case has a complicated procedural history. The Fifth Circuit panel decision was overturned on qualified immunity (not *Bivens* remedy) grounds by *Hernandez v. United States*, 785 F.3d 117, 120-21 (5th Cir. 2015) (en banc). The en banc court specifically stated that it "did not consider whether, even if a constitutional claim had been stated, a tort remedy should be crafted" under *Bivens. Id.* at 121 n.1. The Supreme Court then overturned the denial of qualified immunity and remanded for further consideration of the *Bivens* claims. *Hernandez v. Mesa*, 137 S. Ct. 2003, 2007-08 (2017).

officer has violated clearly established law. *See, e.g., McClendon v. City of Columbia*, 305 F.3d 314, 330-32 (5th Cir. 2002) (en banc) (per curiam). Because numerous courts have held that the prolonged seizure of a vehicle without a post-seizure hearing violates the Fourth and Fifth Amendments, qualified immunity does not apply.

### A. Plaintiff's Fourth Amendment Claim Alleges A Violation Of Clearly Established Law.

Gerardo has sufficiently pled that the prolonged seizure of his truck violated clearly established Fourth Amendment law.

There is no question that a seizure—even if reasonable at its inception—becomes unreasonable if it extends beyond the time necessary to serve the government's legitimate law enforcement objectives. In *United States v. Place*, the Supreme Court held that a ninety-minute seizure of a suitcase at an airport violated the Fourth Amendment. 462 U.S. 696, 710 (1983). While the initial seizure might have well been proper, the "90-minute detention of respondent's luggage is sufficient to render the seizure unreasonable." *Id*. The Fifth Circuit also addressed the unconstitutionality of prolonged seizures in *United States v. Portillo-Aguirre*, where it held that detention of a bus at an immigration checkpoint for an "additional three to five minutes" violated the Fourth Amendment because the seizure extended past the time "reasonably necessary to determine the citizenship status of the persons stopped." 311 F.3d 647, 635, 656 (5th Cir. 2002). If a warrantless seizure can become unreasonable because it extends a few minutes past the time necessary to serve the government's objective, there should be no real question that seizure of a vehicle for *two years* without judicial process violates the Fourth Amendment.

The Ninth Circuit reached a similar conclusion in *Brewster v. Beck*, 859 F.3d 1194, 1197 (9th Cir. 2017). In that case, a vehicle was validly seized because the driver did not have a license, but when the owner (who was not driving at the time of the seizure) came to pick up the

16

car, she was informed that the vehicle would be impounded for thirty days before it was released. *Id*. at 1195. The Ninth Circuit held that this thirty-day impoundment violated the Fourth Amendment; although the initial seizure was valid, once the initial justification had passed the government was required to "cease the seizure or secure a new justification." *Id*. at 1197. While this decision was issued in June 2017, after the initial seizure in this case, the *Bivens* Defendants continued to hold Gerardo's car even after the decision was issued. And, in any event, the decision flows naturally from cases discussed above that predate the events at issue.

Given the foregoing, it should have been clear to a reasonable official that Gerardo's truck could not be detained for two years without judicial process. If the ninety-minute seizure of a suitcase, the five-minute seizure of a bus, or the thirty-day seizure of a car violates the Fourth Amendment, then surely the government requires a legitimate justification to hold a vehicle for two years without approval from a judge.

**B.      Plaintiff's Fifth Amendment Due Process Claim Alleges A Violation Of Clearly Established Law.**

Gerardo also sufficiently pled a violation of his clearly established Fifth Amendment right to a timely post-seizure hearing, as Gerardo's clearly established due process rights were violated in at least two different ways.

***First,*** Gerardo's clearly established rights were violated because the government unreasonably delayed the filing of a forfeiture case. The Supreme Court has held that the right to have a forfeiture case filed without inordinate delay is governed by the same four-factor balancing test that applies in the speedy trial context. *See United States v. $8,850 in U.S. Currency*, 461 U.S. 555, 556 (1983). The Fifth Circuit applied this test in *United States v. $23,407.69 in U.S. Currency*, 715 F.2d 162, 166 (5th Cir. 1983), and held that a thirteen-month delay in initiating forfeiture proceedings violated due process. In light of this precedent, a

reasonable government official would have known that waiting two years to file a forfeiture case violates due process.

Gerardo's is an even easier case than *$23,407.69*. Each of the four factors (the length of delay, the reason for the delay, the defendant's assertion of his right, and prejudice to the defendant) cuts in Gerardo's favor: First, whereas *$23,407.69* involved a thirteen-month delay, this case involves a delay of nearly two years. *Id.* at 163-64. Second, whereas the government in *$23,407.69* had "delayed six months with no explanation of any kind" but had an explanation for the remainder of the delay, in this case the government has *no* explanation. *Id.* at 165-66. Third, Gerardo has done at least as much to assert his rights as the property owner in *$23,407.69*, as he demanded a prompt hearing and repeatedly called to ask when a hearing would be provided. *Id.* at 165. Finally, Gerardo has suffered exactly the same prejudice as the property owner in *$23,407.69*, as he has been deprived of the use of his property during all the time that it was seized. *Id.* at 166. Given the decision in *$23,407.69*, officials had ample notice that holding Gerardo's property for two years without a hearing violated clearly established law.

***Second***, Gerardo's rights were violated because he did not receive a prompt post-seizure opportunity to challenge the initial seizure and the continued retention of the property pending the filing of a forfeiture case. It is important to understand that this type of delay implicates a separate line of due process precedent from that discussed above. In addition to a due process right to have the government file its forfeiture case without inordinate delay, property owners also have the right to a prompt hearing following a seizure—to challenge, among other things, the validity of the seizure. These separate due process rights are akin to the right to a post-arrest hearing and the right to a speedy criminal trial. Here, a reasonable official would have known that holding Gerardo's property without a post-seizure hearing violated due process.

Numerous courts have held that such a hearing is required. In *Krimstock v. Kelly*, the Second Circuit held that New York City violated due process by failing to provide a prompt post-seizure hearing after seizing cars for forfeiture. 306 F.3d 40, 44 (2d Cir. 2002). According to the court, due process requires a prompt, post-seizure opportunity to challenge the legality of the seizure and the continued retention of the property pending the filing of a forfeiture case. *Id.* The Seventh Circuit held the same with regard to the forfeiture practices of the Chicago Police Department. *See Smith v. City of Chicago*, 524 F.3d 834, 838 (7th Cir. 2008), *vacated as moot* 558 U.S. 87 (2009). In addition, both the Southern District of Indiana and the United States District Court for the District of Columbia agree that due process requires a prompt post-seizure, pre-forfeiture hearing. *See Washington v. Marion Cty Prosecutor*, 264 F. Supp. 3d 957, 978 (S.D. Ind. 2017); *Brown v. District of Columbia*, 115 F. Supp. 3d 56, 60 (D.D.C. 2015). A reasonable government official had more-than-adequate notice that holding Gerardo's car without *any kind* of post-seizure hearing violated due process.

This conclusion receives additional confirmation in *United States v. James Daniel Good Real Property*, 510 U.S. 43 (1993). In that case, the Court held that the federal government is required to provide a pre-seizure hearing before it can seize real property for civil forfeiture. *Id.* at 62. After all the "right to prior notice and a hearing is central to the Constitution's command of due process" and can be dispensed with only in "extraordinary situations where some valid governmental interest is at stake." *Id.* at 53 (quoting *Fuentes v. Shevin*, 407 U.S. 67, 82 (1972)). The Court explained that the government does have a valid basis to dispense with a *pre*-seizure hearing when it seizes mobile property, like a vehicle, as otherwise the property owner might take the property outside the jurisdiction. *Id.* at 57. However, once property has been securely seized, that justification disappears. If government must provide a hearing *before* it can seize real

19

property, surely government must at least provide a comparable hearing *shortly after* it seizes a

vehicle—not months or years down the line.[7]

Defendant rests his contrary argument on *United States v. Von Neumann*, 474 U.S. 242

(1986), but that case deals with administrative remission proceedings and not the right to a post-

seizure hearing. *See* Doc. 50 at 15. In fact, the decision specifically distinguished between the

two: The Court stated that when it comes to a delay in bringing a forfeiture proceeding, "due

process requires *a postseizure determination within a reasonable time of the seizure*," 474 U.S.

at 247 (emphasis added), but found that there was nonetheless no constitutional right to "a

speedy disposition of [the] remission petition" because, unlike a post-seizure judicial hearing,

"[r]emission proceedings supply both the Government and the claimant a way to resolve a

dispute informally rather than in judicial forfeiture proceedings." *Id*. at 250. Here, *Von Neumann*

is beside the point, as Gerardo did not file a remission petition and instead paid a $3,804.99 bond

to request a hearing in court. Compl. ¶ 102.  The fact that the government can take its time ruling

on a discretionary petition does not mean that the government can hold property for years

without bringing its case before a judge.

## CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that the Court deny the Motion

to Dismiss of Defendant Juan Espinoza.

---

[7] Defendant seeks to distinguish these cases on the ground that they do not involve *Bivens* claims—noting, for instance, that *Krimstock* was brought under 42 U.S.C. § 1983—but the meaning of the Constitution does not change simply because a case is brought under *Bivens*. *See, e.g.*, *Malesko,* 534 U.S. at 82; *Izen v. Catalina*, 398 F.3d 363, 367 n.3 (5th Cir. 2005).

Dated: January 10, 2018                    Respectfully submitted,

                                           /s/ Robert E. Johnson
                                           _____

Anya Bidwell (TX Bar No. 24101516)         Robert E. Johnson* (VA Bar No. 83219)
INSTITUTE FOR JUSTICE                       Darpana Sheth* (NY Bar No. 4287918)
816 Congress Ave., Suite 960               INSTITUTE FOR JUSTICE
Austin, TX 78701                           901 North Glebe Rd., Suite 900
Tel: (512) 480-5936                        Arlington, VA 22203
Fax: (512) 480-5937                        Tel: (703) 682-9320
Email: abidwell@ij.org                     Fax: (703) 682-9321
                                           Email: rjohnson@ij.org
                                                  dsheth@ij.org

                                           *Admitted *Pro Hac Vice*

*Attorneys for Plaintiff Gerardo Serrano and the Proposed Plaintiff Class*

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on this 10th day of January, 2018, a true and correct copy of the foregoing response brief was filed electronically using the CM/ECF system which will send a notice of electronic filing to all counsel of record.

/s/ Robert E. Johnson