# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF TEXAS
## DEL RIO DIVISION

| | |
|---|---|
| GERARDO SERRANO, on behalf of himself and all others similarly situated, | |
| *Plaintiff*, | |
| v. | Civil Action No. <u>2:17-cv-00048-AM-CW</u> |
| U.S. CUSTOMS AND BORDER PROTECTION; | |
| UNITED STATES OF AMERICA; | |
| KEVIN McALEENAN, Commissioner, U.S. Customs and Border Protection, sued in his official capacity; | |
| JUAN ESPINOZA, Fines, Penalties, and Forfeiture Paralegal Specialist, sued in his individual capacity; | |
| JOHN DOE 1-X, Unknown U.S. Customs and Border Protection agents, sued in their individual capacities; | |
| *Defendants*. | |

## PLAINTIFF'S OBJECTIONS TO REPORT AND RECOMMENDATION

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 4(b) of Appendix C to the Local Rules, Plaintiff Gerardo Serrano respectfully makes the following objections to the Report and Recommendation entered in this matter on July 23, 2018. *See* Doc. 64. For the reasons stated below, the Report should not be followed, and this case should not be dismissed.

Customs and Border Protection seized Gerardo's truck in September 2015—on the theory that five bullets and a magazine mistakenly left in the center console were "munitions of war," making Gerardo an illegal arms smuggler—and held it for over two years without providing any

kind of judicial process. The Report acknowledges that "it certainly appears plausible that Plaintiff's due process rights were violated when it took over two years to return his property." Doc. 64 at 34. Nonetheless, it recommends that Gerardo's claims be dismissed—reasoning that (1) Gerardo's class-wide claim fails on the merits and (2) Gerardo's individual claims fail because *Bivens* does not afford a remedy in these circumstances.

This Court should decline to follow the Report. First, the Report errs when it concludes that Gerardo has failed to state a class-wide claim, as numerous courts find due process requires a prompt post-seizure hearing anytime the government seizes a vehicle for civil forfeiture. *See, e.g.*, *Krimstock v. Kelly*, 306 F.3d 40, 69 (2d Cir. 2002) (Sotomayor, J.); *Washington v. Marion Cty. Prosecutor*, 264 F. Supp. 3d 957, 978-79 (S.D. Ind. 2017); *Brown v. Dist. of Columbia*, 115 F. Supp. 3d 56, 60 (D.D.C. 2015); *see also Smith v. City of Chicago*, 524 F.3d 834, 838 (7th Cir. 2008), *vacated as moot*, 558 U.S. 87 (2009). The Report disregards those cases because they involve state and local forfeitures, but the federal Constitution applies to the federal government just as much as it does to counties, cities, and states.

Second, the Report errs when it concludes that Gerardo's individual claims cannot proceed under *Bivens*, as this case arises in a context where *Bivens* claims have long been recognized. Gerardo's first *Bivens* claim alleges an unreasonable seizure under the Fourth Amendment, and the Supreme Court just recently reaffirmed the application of *Bivens* in that context. And Gerardo's Fifth Amendment claim is a type of *Bivens* claim the Supreme Court has explicitly endorsed—and a type of claim the federal courts have entertained for almost half a century. The Report concludes that the customs forfeiture laws amount to a comprehensive remedial scheme barring such claims, but in fact the customs laws provide no remedy at all for unreasonable delay. The continued vitality of *Bivens* in this context is essential to ensure that

government cannot hold property for years without a hearing and then escape accountability for the harm that it has caused.

## LEGAL STANDARD

This Court's review is *de novo*. *See* 28 U.S.C. § 636(b)(1) ("A judge of the court shall make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made.").

## OBJECTIONS

I.  **THE CLASS DEFENDANTS' MOTION TO DISMISS SHOULD BE DENIED, AND PLAINTIFF'S MOTION TO CERTIFY SHOULD BE GRANTED.**

The Report concludes that Gerardo's class-wide claim is not moot, as it falls in the "inherently transitory" exception to class action mootness, but that Gerardo's class-wide claim should nonetheless be dismissed because it fails on the merits. *See* Doc. 64 at 8-9, 14-23. Gerardo agrees that his class claim is not moot.[1] Gerardo, however, objects to the conclusion that he has failed to state a claim on the merits.

---

[1] While Gerardo agrees with the bottom-line conclusion that the class claims are not moot, Gerardo does object to a portion of the Report's reasoning in reaching that conclusion. Gerardo argued that his claims fell within the "inherently transitory" exception to mootness both because (1) the claims naturally become moot whenever the seizure ends or a hearing is provided and (2) the government has the ability to "pick off" named plaintiffs by voluntarily returning their property. *See* Doc. 55 at 10. The Report endorses the second of these two rationales, but it could be read to reject the first. *See* Doc. 64 at 9.

To the extent that the Report rejects Gerardo's first proffered rationale, Gerardo objects to that conclusion. Courts recognize that claims seeking to compel the government to provide prompt post-seizure hearings are inherently transitory because they naturally become moot with the passage of time. *See, e.g., Krimstock*, 306 F.3d at 70 n.34; *see also Cty. of Riverside v. McLaughlin*, 500 U.S. 44, 52 (1991). While the Report suggests this rationale is foreclosed by *Alvarez v. Smith*, 558 U.S. 87 (2009), the plaintiffs in that case had abandoned their class-action claims, and the Supreme Court thus had no reason to address the inherently transitory exception. *Id.* at 92-93.

A.      **Gerardo Has Stated A Claim That CBP's Failure To Provide A Prompt Post-Seizure Hearing Violates Due Process.**

Gerardo's class-wide claim alleges that CBP violates due process every time it seizes a vehicle for civil forfeiture, as its procedures do not provide for the kind of prompt post-seizure hearing that due process requires. *See* Doc. 1 ¶¶ 152-60. The Report correctly finds that "the customs laws do not provide for any sort of prompt post-seizure, pre-forfeiture hearing." Doc. 64 at 14. However, the Report concludes that due process does not actually require a prompt post-seizure hearing when CBP seizes vehicles for civil forfeiture. *Id.* at 14-22. Gerardo respectfully objects to that conclusion.

The Report bases this conclusion on three interconnected errors, which these objections address in turn. First, the Report disregards a series of cases holding that the government must provide a prompt post-seizure hearing when it seizes vehicles for civil forfeiture, mistakenly concluding that federal cases interpreting the federal Constitution do not apply to the federal government. Second, the Report places undue weight on the Supreme Court's decision in *United States v. Von Neumann*, 474 U.S. 242 (1986), although that decision addressed a totally separate due process question. And, finally, the Report's due process analysis under *Mathews v. Eldridge*, 424 U.S. 319 (1976), errs by underestimating the significance of the private interest at stake and the risk of erroneous deprivation, while overstating the cost of providing a hearing.

1.      The Report Errs By Splitting With *Krimstock* And Other Cases Holding That Due Process Requires A Prompt Post-Seizure Hearing.

The Report errs, first, by disregarding numerous federal cases holding that due process requires a prompt post-seizure hearing when government seizes vehicles for civil forfeiture. In an opinion by then-Judge Sotomayor, the Second Circuit required that vehicle owners be provided a prompt, post-seizure opportunity to challenge the legality of the seizure and the continued retention of the property pending the filing of a forfeiture case. *See Krimstock*, 306 F.3d at 44.

The Seventh Circuit has agreed. *See Smith*, 524 F.3d at 838, *vacated as moot*, 558 U.S. 87 (2009). Even more recently, both the United States District Court for the District of Columbia and the Southern District of Indiana have reached the same conclusion. *See Washington*, 264 F. Supp. 3d at 978-79; *Brown*, 115 F. Supp. 3d at 60. The Report contradicts all this authority when it concludes that Gerardo has failed to state a claim.

The Report distinguishes these cases on the ground that they involve "state, municipal, or district statutes," rather than "a seizure under federal law." Doc. 64 at 18. But that should not make a difference. If due process requires a prompt post-seizure hearing when vehicles are seized by officials in New York City, the District of Columbia, or Marion County, Indiana, there is no reason why federal officials should be subject to a different rule. The federal Constitution indisputably applies to the federal government. And indeed, as the Report notes, at least two courts have already required a prompt post-seizure hearing in the federal context. *See* Doc. 64 at 19 (citing *Lee v. Thornton*, 538 F.2d 27 (2d Cir. 1976); *Pollgreen v. Morris*, 496 F. Supp. 1042, 1051-54 (S.D. Fla. 1980)). The Report declines to follow these cases because they are old, but their continued vitality is demonstrated by *Krimstock*, *Brown*, *Washington*, and other recent cases holding that due process requires a prompt post-seizure hearing.

The Report's proposed distinction between state and federal forfeitures also fails to grapple with the fact that cases requiring a prompt post-seizure hearing grow, in part, out of precedent dealing with *federal* forfeitures. In *Krimstock*, 306 F.3d at 65, 68-69, the Second Circuit found that the right to a prompt post-seizure hearing followed naturally from the Supreme Court's holding, in *United States v. James Daniel Good Real Property*, 510 U.S. 43, 62 (1993), that the federal government must provide a hearing *before* it seizes real property. After all, while the requirement of a *pre*-seizure hearing does not apply to automobiles because of the risk that

the owner might take the property out of the jurisdiction, the justification for postponing a hearing disappears as soon as the vehicle is in custody. "Just as with real property . . . there is no danger that these vehicles will abscond," and there is therefore no reason to deny the owner a prompt opportunity to be heard. *Krimstock*, 306 F.3d at 65. The federal government is not excused from the requirement to provide a pre-seizure hearing for real property, and the federal government likewise should not be excused from the requirement to provide a prompt post-seizure hearing for automobiles.

The Report cites cases that it claims go the other way, but those cases are readily distinguished. *See* Doc. 64 at 19-20. The Report cites *Krimstock v. Safir*, No. 99 Civ. 12041-MBM, 2000 WL 1702035 (S.D.N.Y. Nov. 13, 2000), but that decision was reversed on appeal by the Second Circuit. Meanwhile, the Ninth Circuit's decision in *United States v. One 1971 BMW 4-Door Sedan*, 652 F.2d 817, 820 (9th Cir. 1981), actually *endorses* the proposition that "vehicles seized at remote border points and subject to summary forfeiture are entitled to a probable cause hearing, upon request, within 72 hours of seizure," which, of course, is precisely the situation here.[2] And other cases cited by the Report are factually distinct, as they do not involve automobiles. *See United States v. Aldridge*, 81 F.3d 170 (9th Cir. 1996) (unpublished) (firearms); *In re Seizure of Any and All Funds on Deposit in Wells Fargo Bank, NA*, 25 F. Supp. 3d 270 (E.D.N.Y. 2014) (currency); *United States v. All Funds on Deposit in Dime Sav. Bank*, 255 F. Supp. 2d 56 (E.D.N.Y. 2003) (currency). Because cases finding a right to a prompt post-

---

[2] The Ninth Circuit found no due process violation on the facts of *One 1971 BMW* because the property there was subject to a different statutory scheme that provided greater protection. Under that scheme, property could only be forfeited in a court of law, pursuant to the judgment of an Article III court, with the result that the case had to be immediately referred to the U.S. Attorney to commence judicial forfeiture proceedings. *See* 652 F.2d at 819 & n.1. Today, those procedures only apply to property worth more than $500,000, which obviously excludes Gerardo's truck. *See* 19 U.S.C. §§ 1607, 1610. As a result, Gerardo was required to wind his way through CBP's administrative forfeiture procedures before he could get his day in court.

seizure hearing all rely on the importance of automobiles to their owners, cases outside that context are beside the point. The Report thus breaks with significant precedent, while failing to cite a single on-point precedent in support of its conclusion that the government can seize a vehicle and hold it for months or years without providing a hearing before a neutral judge.

> 2.   The Report Errs When It Finds Its Conclusion Compelled By *Von Neumann*, Which Addressed An Entirely Different Question.

The Report also errs when it cites *United States v. Von Neumann*, 474 U.S. 242 (1986), as controlling authority. *See* Doc. 64 at 16, 20. The Report finds that *Von Neumann* provides a "clear answer" to this question, *id.* at 20, but, to the contrary, *Von Neumann* has nothing at all to say about the issue presented by this case.

This case and *Von Neumann* address totally different parts of the statutory scheme for customs forfeitures. Under that scheme, a property owner has a choice to either seek discretionary relief via an administrative remission petition or to challenge the forfeiture in court. *See* Doc. 55-2 (notice form setting out competing options). Importantly, a remission petition does *not* allow the property owner to challenge the legality of the seizure; to the contrary, a remission petition is "a request for leniency, or an executive pardon," and a property owner filing a petition "does not contest the legitimacy of the forfeiture." *United States v. Morgan*, 84 F.3d 765, 767 n.3 (5th Cir. 1996). The question in *Von Neumann* was whether the government has to provide a prompt decision on a remission petition—essentially a discretionary pardon petition—whereas the question in this case is whether a property owner who chooses to challenge the forfeiture has a right to a prompt hearing in a court of law.

The rationale of *Von Neumann* has no application here. The Supreme Court found no requirement to act in a timely fashion on a remission petition because "remission proceedings are not *necessary* to a forfeiture determination, and therefore are not constitutionally required." *Von*

*Neumann*, 474 U.S. at 250. In other words, remission is a matter of grace, not law, and the government is not required to dispense its grace on a particular timetable. By contrast, Gerardo does not claim that he was entitled to a speedy answer to a remission petition, as Gerardo *never filed* a remission petition. The fact that an agency can delay responding to a pardon-like request for administrative grace does not remotely imply that an agency can seize property and hold it indefinitely without providing a hearing before a neutral judicial officer when the owner seeks to challenge the seizure and continued retention of his property.

        3.      The Report's *Mathews* Analysis Underestimates The Value Of A Hearing And Overstates The Government's Interest In Denying One.

Finally, the Report concludes that a prompt post-seizure hearing is not required under the three-part analysis established by *Mathews v. Eldridge*, 424 U.S. 319 (1976). *See* Doc. 64 at 20-22. This is yet another way that the Report departs from prior precedent, as cases requiring a prompt post-seizure hearing all do so under the *Mathews* framework. *See, e.g., Krimstock*, 306 F.3d at 67; *Smith*, 524 F.3d at 838; *Brown*, 115 F. Supp. 3d at 66; *Washington*, 264 F. Supp. 3d at 979. Even apart from that, moreover, the Report's *Mathews* analysis is profoundly mistaken.

With respect to the first *Mathews* factor, the private interest affected, the Report concedes that "[u]nquestionably the seizure of a vehicle implicates an important private interest." Doc. 64 at 20. This brief statement, however, gives short shrift to the vital importance of the interest. After all, "[a]utomobiles occupy a central place in the lives of most Americans, providing access to jobs, schools, and recreation as well as to the daily necessities of life." *Krimstock*, 306 F.3d at 61 (quoting *Coleman v. Watt*, 40 F.3d 255, 260-61 (8th Cir. 1994)). "[A] car may be a person's only means to earn a livelihood." *Brown*, 115 F. Supp. 3d at 66. Moreover, this interest is heightened because the government "retains seized vehicles for months or sometimes years before the merits of a forfeiture action are addressed," *Krimstock*, 306 F.3d at 62, as "the statute

8

allows for a lengthy time period to pass between the seizure of a vehicle and the forfeiture proceedings," *Washington*, 264 F. Supp. 3d at 976. Depriving citizens of their personal vehicle—a vehicle they may need to travel to work, to school, to church, to the doctor, or to see family—for months or even years is an extraordinary burden.

With respect to the second *Mathews* factor, the risk of erroneous deprivation and the probable value of additional safeguards, the Report concludes that the "risk of erroneous deprivation is also minimal" because "[a]t the border, a person has diminished privacy rights," meaning "there are minimal Fourth Amendment or probable cause concerns." Doc. 64 at 20-21. This conclusion erroneously conflates the right to search, the right to seize, and the right to retain property pending a civil forfeiture case. Border agents undoubtedly have significant authority to *search* at the border, and can even conduct searches without probable cause, but it does not follow that border agents can *seize* property without probable cause—much less that they can *retain* such property without providing a prompt hearing. If property is seized for civil forfeiture without probable cause, that property must be returned, even if the seizure happens at the border. The border context therefore does not meaningfully distinguish this case.

The Report also concludes that there is little risk of erroneous deprivation because "CBP agents are well trained in identifying customs violations." Doc. 64 at 21. Again, this conflates the legality of the seizure with the question of whether the property can be retained. The legality of the seizure is just one of several issues that might be raised at a hearing. A hearing would allow the property owner to raise defenses to forfeiture; for instance, Gerardo would have argued that the forfeiture of his vehicle as a sanction for "smuggling" five low-caliber bullets would be excessive under the Eighth Amendment. *See* Doc. 1 ¶¶ 46, 91. And, even beyond the merits, the hearing would provide an opportunity for the property owner to argue that the vehicle should be

released pending the forfeiture case. *See Krimstock*, 306 F.3d at 70 ("[T]he retention hearing will allow the court to consider whether less drastic measures than continued impoundment, such as a bond or a restraining order, would protect the [government's] interest."). Even assuming wrongful seizures are rare, a hearing still has value to the property owner.

The Report's statement that CBP agents are well-trained also does not meaningfully distinguish other cases requiring a prompt post-seizure hearing. In *Krimstock*, for instance, the Second Circuit concluded that "a trained police officer's assessment of the owner-driver's state of intoxication can typically be expected to be accurate" but nonetheless found that other considerations weighed in favor of requiring a prompt post-seizure hearing. 306 F.3d at 62-63. And in *Brown*, the court considered the same argument but found that "there is at least some risk of erroneous deprivation" when a seizure "rests solely on the arresting officer's unreviewed probable cause determination." 115 F. Supp. 3d at 66-67. Even well-trained law enforcement officers can benefit from review by a neutral magistrate.

The Report also errs when it concludes that review by the United States Attorney reduces the risk of erroneous deprivation. *See* Doc. 64 at 21. The Complaint alleges that CBP does not forward cases to the U.S. Attorney in a timely fashion, meaning months or even years may go by without an AUSA seeing the case file. *See* Doc. 1 ¶¶ 82-84. Even assuming a prosecutor's review of the case file could substitute for an adversarial hearing before a neutral magistrate— and it cannot—review months or years after a seizure cannot provide the kind of prompt hearing that due process requires.

Finally, with respect to the third *Mathews* factor, the government's interest and the burdens associated with additional procedures, the Report dramatically overstates the government's interest in denying property owners a prompt post-seizure hearing. The Report

10

states that the "government . . . has a strong interest in preventing the exportation of munitions of war and preserving items capable of escaping the grasps of forfeiture, such as a truck, which can easily be disposed of or sold." Doc. 64 at 20. This, however, is a reason for dispensing with a *pre*-seizure hearing, not a reason to refuse to provide a prompt *post*-seizure hearing once the vehicle is safely in custody. "Just as with real property . . . there is no danger that these vehicles will abscond." *Krimstock*, 306 F.3d at 65; *see also James Daniel Good*, 510 U.S. at 56 ("The governmental interest we consider here is not some general interest in forfeiting property but the specific interest in seizing [the subject] property before the forfeiture hearing."). The government can continue to enforce the civil forfeiture laws while providing a prompt post-seizure hearing to owners of seized automobiles.

The Report also errs when it suggests—without the benefit of evidence—that "the United States government simply does not have the capability of providing a prompt post-seizure hearing in every case." Doc. 64 at 21. While the number of seized vehicles is large, the number seized by state and local governments is large as well, and is in fact far *larger* given the relative size of the jurisdictions. Yet courts have not hesitated to require a prompt post-seizure hearing in cases involving state and local governments. When officials in Marion County, Indiana, argued that a hearing would be overly burdensome, for instance, the court in *Washington* noted that "due process always imposes some burden on governmental actors" and that "the government already has experience with conducting post-arrest probable-cause hearings" and can conduct post-seizure hearings in a similar manner. 264 F. Supp. 3d at 978. And when the District of Columbia argued that post-seizure hearings would be too burdensome, the court in *Brown* rejected the argument because "the government has not offered any evidence" to support that claim. 115 F. Supp. 3d at 67. Here, by contrast, the Report finds a crushing administrative burden without the

11

benefit of any evidence at all. That is error. If Marion County and the District of Columbia can

provide post-seizure hearings, the federal government can do the same.

### B.    Plaintiff's Motion For Class Certification Should Be Granted.

Having concluded that Gerardo's class-wide claims fail on the merits, the Report

concluded that Plaintiff's Motion for Class Certification should be dismissed because, the claims

having failed on the merits, "there is nothing to base class certification upon." Doc. 64 at 23. For

the reasons explained above, Gerardo objects to the conclusion that his class-wide claims fail on

the merits, and thus also objects to the decision not to certify a class. Rather, for the reasons

advanced in Plaintiff's Motion for Class Certification (Doc. 4) and the supporting Reply (Doc.

57), class certification should be granted. *See Washington*, 264 F. Supp. 3d at 964-67 (certifying

class to litigate identical due process claim); *Hoyte v. Dist. of Columbia*, No. 13-cv-569, 2017

WL 3208456, at *7-9 (D.D.C. July 27, 2017) (same); *Krimstock v. Kelly*, No. 99-cv-12041, 2005

U.S. Dist. LEXIS 43845, at *3 (S.D.N.Y. Nov. 29, 2005) (same).

## II.    DEFENDANT ESPINOZA'S MOTION TO DISMISS SHOULD BE DENIED.

In addition to his claim for class-wide injunctive relief, Gerardo also seeks to recover the

costs that he incurred because of the prolonged seizure of his property—including payments that

he made for a car he could not drive, as well as the cost to rent replacement rental vehicles. *See*

Doc. 1 ¶¶ 136-51. The Report finds it "plausible that Plaintiff's due process rights were

violated," and the Report deems it "unfortunate when a statutory scheme fails, resulting in not

insignificant damages." Doc. 64 at 33-34. Nonetheless, the Report concludes that Gerardo cannot

pursue a *Bivens* claim. *Id.* at 25-33. This leaves Gerardo with no route to recover for the violation

of his constitutional rights.

The Report's *Bivens* analysis proceeds in two parts. First, the Report concludes that these

claims arise in a "new context," even though *Bivens* itself involved an illegal seizure, and even

12

though the Supreme Court has approvingly cited a case providing a *Bivens* remedy on nearly identical facts. *See* Doc. 64 at 27-30. Then, the Report concludes that there are "special factors counseling hesitation" because the customs laws act as a comprehensive remedial scheme, even though those laws provide no remedy at all for unconstitutional delay. *See id.* at 26, 30-33. Gerardo objects to both conclusions, and this brief addresses each in turn.

###### A.     Plaintiff's Claims Do Not Arise In A New Context.

For almost half a century, federal courts have allowed *Bivens* claims to remedy unconstitutional delays in civil forfeiture cases. *See, e.g.*, *Seguin v. Eide*, 720 F.2d 1046, 1048 (9th Cir. 1984) (customs officials held vehicle for six months without a hearing); *States Marine Lines, Inc. v. Shultz*, 498 F.2d 1146, 1152 (4th Cir. 1974) (customs officials held cargo freight for seventeen months without a hearing). Despite this history, the Report concludes that this case arises in a "new context" because these cases are not Supreme Court cases, and the Supreme Court has not recognized a *Bivens* remedy on precisely these facts. *See* Doc. 64 at 27. In fact, however, this case arises in a context where the Supreme Court has repeatedly recognized a *Bivens* remedy.

1.     The Supreme Court Has Just Recently Reaffirmed The Continued Vitality Of *Bivens* In The Fourth Amendment Context.

Gerardo's first *Bivens* claim arises under the Fourth Amendment, as Gerardo claims the seizure of his property was unreasonably prolonged. *See* Doc. 1 ¶¶ 136-42. This claim falls at the core of the *Bivens* remedy. The decision in *Bivens v. Six Unknown Named Agents*, 403 U.S. 388 (1971), involved an illegal search and seizure, and the Supreme Court has recently reaffirmed "the continued force, or even the necessity, of *Bivens* in the search-and-seizure context in which it arose." *Ziglar v. Abbasi*, 137 S. Ct. 1843, 1856 (2017). "The settled law of *Bivens* in this common and recurrent sphere of law enforcement, and the undoubted reliance upon it as a fixed

principle in the law, are powerful reasons to retain it in that sphere." *Id.* at 1857. The Report's conclusion that Gerardo's Fourth Amendment claim arises in a "new context" cannot be squared with that recent pronouncement from the United States Supreme Court.

Although Fourth Amendment claims fall at the heart of *Bivens*, the Report concludes that *Bivens* does not apply because Gerardo's "allegations establish a potential Fifth Amendment Due Process Clause violation" and "Plaintiff's simple reframing of his Fifth Amendment claim as a Fourth Amendment claim is to no avail." Doc. 64 at 30. This conclusion rests on a faulty premise, as it suggests that the Fourth and Fifth Amendments cannot overlap. Of course, it is entirely possible that the government violated *both* amendments through a single course of conduct. Indeed, that is what Gerardo alleged, when he brought separate Fourth and Fifth Amendment claims. *See* Doc. 1 ¶¶ 136-51. Gerardo's Fourth Amendment claim cannot be dismissed simply because his Fifth Amendment rights were also violated.

The Report also suggests that Gerardo has not pled a violation of the Fourth Amendment, as the "true premise of Plaintiff's argument is that the delay in processing the forfeiture claim made the *forfeiture*, not the seizure, unconstitutional." Doc. 64 at 30. But that is not true, as the Complaint clearly and plainly alleges that the unreasonably prolonged *seizure* of Gerardo's property violated his Fourth Amendment rights. *See* Doc. 1 ¶ 138 (alleging that the "*seizure* of Plaintiff's property for over twenty-three months, without judicial process, violates the Fourth Amendment's prohibition on unreasonable seizures" (emphasis added)). Indeed, Gerardo's property was never forfeited, and it makes no sense to say that he seeks damages for a forfeiture that never happened.

To the extent the Report suggests that Gerardo's Fourth Amendment claim should fail on the merits, that suggestion is irrelevant to the *Bivens* analysis, and, in any event, should be

14

rejected. The Fourth Amendment is violated when a seizure is unlawfully prolonged: For instance, the Supreme Court found that the seizure of a traveler's luggage became unlawful when the government held the luggage for 90 minutes, *see United States v. Place*, 462 U.S. 696, 710 (1983), and the Fifth Circuit held that the seizure of a bus at an immigration checkpoint became unlawful when the government held the bus for three to five minutes too long, *see United States v. Portillo-Aguirre*, 311 F.3d 647, 656 (5th Cir. 2002). In *Rodriguez v. United States*, 135 S. Ct. 1609, 1616 (2015), the Supreme Court reiterated that law enforcement may not prolong a seizure beyond the point required by its legitimate justification. And even closer to the point, the Ninth Circuit recently held that the seizure of a vehicle for 30 days without a hearing was unreasonable and violated the Fourth Amendment. *See Brewster v. Beck*, 859 F.3d 1194, 1197 (9th Cir. 2017).[3] Gerardo has likewise stated a claim that the two-year seizure of his vehicle was unreasonably prolonged and therefore violated his Fourth Amendment rights. Because that claim arises at the core of the *Bivens* remedy, it should have been allowed to proceed.[4]

### 2. The Supreme Court Has Explicitly Endorsed Fifth Amendment *Bivens* Claims For Unreasonable Delay In Civil Forfeiture Cases.

Gerardo's second *Bivens* claim alleges that the failure to institute forfeiture proceedings within a reasonable time violated his Fifth Amendment due process rights. *See* Doc. 1 ¶¶ 143-51. This also is not a new context, as federal courts have allowed this type of *Bivens* claim for almost half a century, and the Supreme Court endorsed that longstanding practice in *Davis v. Passman*,

---

[3] The Report concludes that *Brewster* is irrelevant because it "was issued by another circuit and not the Supreme Court." Doc. 64 at 30 n.20. But even if *Brewster* is not binding, it is nonetheless persuasive authority. And *Brewster* primarily bases its conclusions on the Supreme Court's decision in *Place*, which assuredly is binding on this Court.

[4] While Gerardo's claim for damages focuses on the prolonged nature of the seizure, rather than the seizure's initial justification, Gerardo also objects to the Report's conclusion that "the initial justification for the seizure of Plaintiff's vehicle, magazine, and bullets is indeed valid." Doc. 64 at 29. The fact that law enforcement found five bullets in the center console does not remotely give rise to probable cause that Gerardo intended to export "munitions of war" in violation of the customs laws. 22 U.S.C. § 401.

442 U.S. 228 (1979). In that case, the Supreme Court recognized a *Bivens* action under the Fifth

Amendment and—more important here—approvingly cited a decision that allowed a Fifth

Amendment *Bivens* claim for a prolonged seizure by customs officials. *Id.* at 244 & n.22 (citing

*States Marine Lines*, 498 F.2d at 1146).[5] A type of claim that was endorsed by the Supreme

Court in 1979 can hardly be "new."

The Report acknowledges that *Passman* "cites favorably to . . . a *Bivens* case legally and

factually similar to the one here" but deems that fact irrelevant because "a 1979 Supreme Court

footnote citing a circuit opinion not before the Court is dicta." Doc. 64 at 28. Gerardo objects to

that conclusion, as the Report errs by dismissing the reasoning of a Supreme Court decision as

mere "dicta." While courts "are not bound by dicta . . . dicta of the Supreme Court are, of course,

another matter." *Campaign for S. Equality v. Bryant*, 791 F.3d 625, 627 n.1 (5th Cir. 2015)

(brackets omitted) (quoting *United States v. Becton*, 632 F.2d 1294, 1296 n.3 (5th Cir. 1980)).

Courts are "bound to follow both the holding and the reasoning, even if dicta, of the Supreme

Court." *Navajo Nation v. Dalley*, __ F.3d __, 2018 WL 3543643, at *8 n.6 (10th Cir. July 24,

2018). The Report appears to conclude that the reasoning of *Passman* is undermined by later

decisions, but that also is not a reason to disregard the *Passman* decision. The Supreme Court has

admonished that courts "should follow the case which directly controls, leaving to this Court the

prerogative of overruling its own decisions." *Agostini v. Felton*, 521 U.S. 203, 207 (1997). Until

the Supreme Court says otherwise, even dicta in *Passman* is entitled to respect.

---

[5] In *States Marine Lines*, the owner of cargo freight seized by customs agents sued in federal court seeking return of the property and damages under *Bivens*, claiming that detention of the property for approximately seventeen months violated due process. 498 F.2d at 1152-53, 1156. The Fourth Circuit allowed the *Bivens* claim to proceed, holding that "the claim presented is obviously appropriate for money damages" because "government officers, under the cloak of federal statutory authorization vested in them, have deprived plaintiff of his property in violation of the Constitution resulting in considerable damages." *Id*. at 1157.

**B.     There Are No Special Factors Counseling Hesitation.**

Even if Gerardo's *Bivens* claims arise in a "new context," the claims can still proceed so long as there are no "special factors counseling hesitation." *See, e.g., Loumiet v. United States*, 255 F. Supp. 3d 75, 83-84 (D.D.C. 2017). The Report finds such "special factors," concluding that the customs forfeiture laws amount to "a comprehensive forfeiture scheme" and demonstrate "Congress's reluctance to extend the availability of monetary damages." Doc. 64 at 31-32. Gerardo objects to that conclusion as well.

Courts find that a comprehensive statutory scheme bars a *Bivens* remedy where the scheme provides a remedy (even an incomplete or inadequate remedy) for the type of violation that the plaintiff suffered. "In each such case, there was a statutory scheme that provided relief for similarly-situated plaintiffs, but happened not to provide relief for the litigant, either due to the particular factual circumstances, or the nature of the relief sought." *Loumiet*, 255 F. Supp. 3d at 86. For instance, in *Bush v. Lucas*, 462 U.S. 367, 385-90 (1983), a federal employee claiming that his demotion was unlawful First Amendment retaliation did not have a *Bivens* remedy because he could seek redress for that very claim under the Civil Service and Reform Act. And in *Schweiker v. Chilicky*, 487 U.S. 412, 414, 428-29 (1988), a plaintiff who alleged that the erroneous termination of her disability benefits violated due process did not have a *Bivens* remedy because she could raise that claim by appealing the benefits denial. Under these cases, the mere existence of a detailed statutory scheme does not preclude a *Bivens* remedy. Rather, the statutory scheme must show that Congress made a considered decision about how best to remedy the type of violation suffered by the plaintiff.

    This is not that kind of case, as the customs forfeiture laws do not address the question of what should happen if the government unreasonably delays initiating a forfeiture action. As the Report itself notes, under the customs laws, a property owner who demands a hearing "must

await referral of his case by a customs agent to a U.S. attorney for possible institution of forfeiture proceedings." Doc. 64 at 14. The customs laws do say that customs officials should report the case "promptly" and direct the U.S. Attorney to act without "unreasonable delay," *id.*, but the Supreme Court has held that this language is not judicially-enforceable. *See James Daniel Good*, 510 U.S. at 64-65. The statutory scheme is thus utterly silent about what should happen if the government fails to act promptly and instead holds seized property for months or years without a hearing. Far from offering a detailed remedial scheme to address such cases, Congress appears not to have considered the question.

The Report suggests that property owners *do* have a remedy for unreasonable delay because they can "file a Rule 41 motion for the return of property," Doc. 64 at 31, but here the Report flatly contradicts itself. Addressing Gerardo's Rule 41(g) motion in this very case, the Report concludes that, "because no criminal proceeding is pending, Rule 41(g) motion is an improper mechanism for seeking the return of seized property." *Id.* at 6 n.3. In other words, the Report concludes that Rule 41(g) does not actually provide a mechanism for a property owner to challenge delay in bringing a forfeiture case. *See also United States v. Hernandez*, 911 F.2d 981, 983 (5th Cir. 1990) ("[T]he proper place to litigate the legality of the seizure is in the forfeiture proceeding."); *United States v. Price*, 914 F.2d 1507, 1511 (D.C. Cir. 1990) ("[O]nce the Government initiates an administrative forfeiture . . . the District Court has no jurisdiction to resolve the issue of return of property."). Rule 41(g) can hardly provide a comprehensive remedy for the type of violation in this case, when it does not even apply.

In the final analysis, the Report suggests that—although Rule 41(g) does not apply—a court may nonetheless remedy delay by invoking "its general equity jurisdiction" to order the property returned. Doc. 64 at 6 n.3. Gerardo agrees that courts have inherent equitable authority

to order property returned following unreasonable delay in bringing a forfeiture case. But the fact that a court can invoke its "general equity jurisdiction" to provide a remedy hardly supports the conclusion that Congress has created a comprehensive *statutory* scheme to redress that type of violation. To the contrary, if courts must invoke their "general equity jurisdiction" to order property returned, that only highlights the fact that Congress has provided no statutory remedy at all—much less a comprehensive remedial scheme.

Finally, the Report expresses concern that recognizing a *Bivens* remedy for unreasonable delays in civil forfeiture cases would give rise to a "new species of litigation" that would "have significant consequences on the federal government and its employees." Doc. 64 at 32 (quoting *Wilkie v. Robbins,* 551 U.S. 537, 562 (2007)). However, as noted above, *supra* pp. 13, 16, federal courts have allowed precisely this type of *Bivens* claim for almost half a century. Congress could have amended the statutory scheme to displace *Bivens* at any time, but Congress has done nothing of the sort. And the government has nowhere suggested that the availability of a *Bivens* remedy for the past half-century has led to any adverse consequences or burdened the operations of the government in any significant way. The Report errs when it suggests that the sky will fall if this longstanding *Bivens* remedy remains in place.

## CONCLUSION

For the foregoing reasons, Plaintiff respectfully objects to the Magistrate Judge's Report and Recommendation. The Defendants' Motions to Dismiss should be denied, and Plaintiff's Motion to Certify should be granted.

Dated: August 6, 2018                    Respectfully submitted,

                                         /s/ Robert E. Johnson

Anya Bidwell (TX Bar No. 24101516)       **Robert E. Johnson**\* (VA Bar No. 83219)
INSTITUTE FOR JUSTICE                    Darpana Sheth\* (NY Bar No. 4287918)
816 Congress Ave., Suite 960             INSTITUTE FOR JUSTICE
Austin, TX 78701                         901 North Glebe Rd., Suite 900
Tel: (512) 480-5936                      Arlington, VA 22203
Fax: (512) 480-5937                      Tel: (703) 682-9320
Email: abidwell@ij.org                   Fax: (703) 682-9321
                                         Email: rjohnson@ij.org
                                                dsheth@ij.org

                                         \*Admitted *Pro Hac Vice*

        *Attorneys for Plaintiff Gerardo Serrano and the Proposed Plaintiff Class*

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on this 6th day of August, 2018, a true and correct copy of the foregoing Objections was filed electronically using the CM/ECF system which will send a notice of electronic filing to all counsel of record.

/s/ Robert E. Johnson